**John O. HICKMAN, et al., Appellants,**

v.

**Charles Edward RAWLS and J. Robert Welty, Appellees.**

**No. 21073.**

Court of Appeals of Texas, Dallas.

June 23, 1982.

Rehearing Denied July 26, 1982.

Wm. Andress, Jr., Wm. Andress & Associates, Dallas, for appellants.

Paul W. Brown, B. Dennis King, Branch & Brown, Dallas, for appellees.

Before AKIN, VANCE and WHITHAM, JJ.

AKIN, Justice.

John Hickman, John Freeman and Robert Hall appeal from a judgment decreeing them jointly and severally liable to Charles Rawls and J. Robert Welty for a debt of Western Hills Building Co., Inc. Rawls and Welty sought to pierce the corporate veil of Western Hills in order to hold Hickman, Freeman and Hall, the sole shareholders of

Western Hills, liable for the corporation's breach of contract. Trial was to a jury, which found in favor of the plaintiffs. Acting on the jury's verdict, the trial judge rendered judgment against the shareholders and they appeal. We reverse and render on the ground that, as a matter of law, no justification exists for ignoring the corporate entity.

The evidence shows that Rawls and Welty entered a contract with Western Hills Building Company on March 15, 1977, to make design revisions, to provide a mortgage package including working drawings, and to make job inspection visits to the construction site for a proposed health spa. The contract provided that Rawls and Welty would receive a fixed fee of $17,850, and was signed by John Hickman for Western Hills Building Company. Rawls and Welty were told that the proposed budget for the spa was $595,000, based on a schematic plan prepared by another architect, and Rawls and Welty agreed that something could be built for that amount. After the plans for the spa had been completed, bids on the project were invited with the lowest bid received being $703,320. At this time Western Hills decided not to continue the project and failed to pay Rawls and Welty in accordance with the architectural contract.

Because Western Hills was unable to pay, Rawls sought to pierce the corporate veil and to hold the shareholders liable. To support this theory, Rawls and Welty produced evidence that the corporation was incorporated on October 29, 1976, and that its charter was forfeited on March 19, 1979, for failure to pay the franchise tax and to file a franchise tax return for the first year of incorporation. During its existence, Western Hills had one meeting of the board of directors and one shareholder meeting. The corporation had adopted a set of by-laws and had passed a resolution to open a checking account and to make loans in the name of Western Hills Building Company, Inc., but no account was opened or loans made. Stock certificate stubs were filled out indicating the number of shares owned by Hickman, Freeman and Hall, although the stock certificates themselves were never filled out. No financial records were kept.

Rawls and Welty additionally showed that Western Hills was capitalized with $1,000, which was deposited into a bank account designated "John O. Hickman Special Account." In addition to the $1,000, Hickman, Freeman and Hall deposited $3,500 and Hickman personally borrowed $5,000 and deposited it in the account, so that the account balance was $9,500. Checks were written on the account totalling $5,909.17, with one check drawn for $1,407.17, to pay interest on a personal loan of Freeman.

The jury found that: (1) at the time Hickman executed the contract for architectural services, the corporation would be unable to pay for them; (2) Hickman was acting at such time with the knowledge and consent of "either or both" Hall and Freeman; (3) Hall and Freeman authorized Hickman to contract on behalf of the corporation; (4) at the time of the execution of the architectural contract, inadequate corporate records were maintained by the corporation; and (5) inadequate corporate records were maintained by the corporation with respect to receipt and disbursement of funds. Based on these findings, the trial judge disregarded the corporate entity and rendered judgment against the shareholders.

Hickman, Freeman and Hall contend that the trial court erred in ignoring the corporate entity and in rendering judgment against them individually as directors, incorporators and shareholders. On the other hand, Rawls and Welty argue that because they did not know that they were dealing with a corporation, because Hickman knew at the time of the contract that Western Hills could not pay Rawls and Welty, and because Western Hills failed to maintain proper financial records and follow proper corporate procedures, the trial court correctly disregarded the corporate entity and held these shareholders liable. We agree with appellants that the verdict fails to support the judgment piercing the corpo-

rate veil. Likewise, neither does the evidence as a whole support the judgment. Accordingly, we reverse the judgment against the shareholders individually and render judgment that plaintiffs take nothing against them.

The general rule is that a corporate entity may not be ignored. An exception to this rule exists only under the most extraordinary circumstances where the corporate entity is used to perpetrate a fraud against the public or against public policy such as to achieve a monopoly or to circumvent a statute or to protect crime. *Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex. 1980); *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 339 (Tex. 1968); *Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340 (1955). Fraud, as used in the exception is something more than inducing others to contract with a corporate entity which lacks the ability to pay even though the corporate agent knew such fact. *Cf. State v. Nevitt,* 595 S.W.2d 140, 143 (Tex. Civ. App.—Dallas 1980, no writ) (Inability to pay taxes insufficient to pierce corporate veil). Likewise, we hold that a failure to maintain proper records and to prevent creditors from collecting from the corporation do not rise to the level required to ignore the corporation, absent additional compelling facts. Our conclusion is supported by the facts that the corporation was not a sham used for some illegal scheme, but was organized for a legitimate purpose which failed due to circumstances beyond the control of the defendants. Furthermore, no evidence exists in this record of any circumstance to suggest that the corporate entity was used against the public policy, such as to condone crime or other heinous reasons or in bad faith which justify ignoring the legislatively created entity of the corporation. *See Sutton v. Reagan & Gee,* 405 S.W.2d 828, 836–837 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e.). Of course, one of the purposes of the corporate entity is to shield the incorporators from personal liability, a purpose implicit in the legislative authorization of the corporate entity.

As we observed in *Hanson Corp. v. Dal-Mac Construction Co., 554 S.W.2d 712 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.), the overriding public policy necessary to disregard the corporate entity must be more stringent in contract cases than in tort cases because in contract cases the plaintiff has an opportunity to select the entity with which he deals as opposed to tort cases in which no such choice exists, id.* 717. Thus, the same question exists here where plaintiff's elected to contract with Western Hills Building Company and, when disappointed in being unable to collect from the company, sought to collect from the shareholders and directors. Obviously, when Hickman signed the contract for Western Hills Building Company, the plaintiffs were placed on notice, as a matter of law, that they were not dealing with Hickman individually, but rather a corporation or some other legal entity. Certainly, the fact that they contracted with some entity, be it corporate or otherwise, gave them the opportunity to investigate the financial ability of the contracting party before performing to their detriment. In such a situation, a court should not resort to the drastic exception to the general rule that the corporate entity must remain inviolate.