Hubert Michael THOMAS, Appellant,

v.

Diana Jane THOMAS, Appellee.

No. 10–94–258–CV.

Court of Appeals of Texas,
Waco.

Feb. 21, 1996.

Amy Grubbs Thomas, Mexia, for appellant.

LaNelle L. McNamara, McNamara & McNamara, Waco, for appellee.

Before CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Appellants, Hubert Michael Thomas (Michael), Michael's present wife and attorney, Amy Thomas (Amy) (collectively known as the Thomases), and Michael Thomas, P.C., bring fourteen points of error appealing the granting of a permanent turnover order for collection of a judgment in favor of Michael's ex-wife, Diana Thomas (Diana). We affirm in part and reverse and render in part.

In an effort to collect overdue and unpaid alimony installments, the appellee, Diana, filed suit against Michael for breach and anticipatory repudiation of an alimony contract. On December 15, 1992, a jury awarded Diana $100,000 in damages and $10,500 in attorneys fees. The trial court reduced the judgment against Michael to $68,000 in damages plus pre-judgment interest at the rate of 6% per annum on each installment after it became due and payable, and for post-judgment interest at the rate of 10% per annum beginning on December 15, 1992. Michael did not file any post-judgment motions. However, Diana requested a new trial or modification of the judgment. Her requests were overruled by operation of law, and the judgment became final on March 31, 1993.

On May 20, 1993, Diana filed a verified motion for an ex parte temporary turnover order[1] in the 77th District Court of Limestone County, alleging that the judgment was wholly due and unpaid. The motion requested an order that monies due and owing to Michael, as fees for legal services rendered by him, including monies due and owing to him as the attorney in a specific

---

1. The purpose of the turnover statute is to aid a diligent judgment creditor in reaching the property of the judgment debtor that the creditor cannot readily attach or levy on by ordinary process. The property must not be exempt from attachment, execution, or seizure for the satisfaction of liabilities. *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306 (Tex.App.—Dallas 1992, no writ); *see* Tex.Civ.Prac. & Rem.Code Ann. § 31.002(a)(1), (2) (Vernon 1986).

case, be paid into the registry of the trial court pending notice and hearing. The trial court granted the temporary turnover order on May 20, 1993.

The hearing on the motion for the turnover order was set for May 26, 1993, and citation and notice of hearing was issued to Michael. In addition, Robert Hanley, the opposing attorney in a suit tried by Michael, was ordered to deliver into the registry of the court funds that were presently or in the future to be paid to Michael or Michael Thomas, P.C. under the terms of the judgment in that cause. After a conference call between all the interested parties, an agreement was reached concerning payment of the contested funds. Thereafter, a check for $60,000, representing the amount of funds due in the previous case, was deposited into the registry of the court by Robert Hanley.

On or about May 27, 1993, Michael filed a motion to recuse Judge Black for allegedly engaging in ex parte conversations with Diana. Judge David Walker presided over the recusal hearing and denied the motion. On or about June 29, 1993, Michael filed an application with this court for a writ of mandamus to void the temporary turnover order and to remove Judge Black from the case. This court denied the motion on July 14, 1993.

In July and August, several attempts at settlement were made. The settlement talks broke down over $1,000 in attorney's fees Diana claimed she incurred in the mandamus proceedings regarding Judge Black's recusal and $2,589 in fees and costs related to the turnover action.

On September 8, 1993, Judge Black voluntarily recused himself in this cause. Sometime thereafter, Judge R. Wayne Lawrence of the Third Judicial District Court was appointed to preside in this cause. On or about September 15, 1993, an additional $16,500 was delivered into the registry of the court by Michael.

Judge Lawrence scheduled a hearing for November 10, 1993 to consider making the turnover order permanent and releasing the funds to Diana. At the hearing, Michael argued that he did not own the funds deposited into the registry of the court by Robert Hanley. He claimed that the property actually belonged to Michael Thomas, P.C., the name of his incorporated law firm. He argued that, since the funds did not belong to him, they were not subject to the turnover order.

In addition, there was some question during the turnover proceedings as to the viability of the professional corporation itself. Evidence was produced at trial that showed Michael Thomas, P.C. was incorporated in 1983 and Michael was the registered agent and sole stockholder of the corporation. He also was listed as one of two directors of the corporation. There was no evidence at trial concerning the relationship of the other director to the corporation, or whether he was involved in the day to day operations of the business. Moreover, evidence was also produced at trial that showed that Michael Thomas, P.C. had failed to file franchise tax returns as required in Texas, which resulted in the forfeiture of the corporate charter in 1987. Furthermore, Michael Thomas, P.C. apparently had failed to file income tax returns since 1987. In addition, Michael's individual 1991 tax return was introduced into evidence to show that he reported all income as "self-employment income." However, the corporation was never dissolved. Michael claimed he was unaware of the forfeiture and continued to practice law as a corporation during the time of forfeiture. The corporate charter was not reinstated until 1994 after Diana had brought these facts before the trial court.

On January 26, 1994, Judge Lawrence granted turnover relief and instructed Diana to prepare a proposed order. Two days later, Diana notified Michael that the proposed order would be delivered in person to Judge Lawrence at or before 10:00 a.m. on January 31. Michael notified the court that he had not been afforded sufficient time to review the proposed order and requested that no order be signed ex parte. He also notified the court of his intent to appeal the turnover order and requested that the funds in the registry not be disbursed until the order became final.

On February 2, Diana filed a motion for Rule 13 sanctions based upon the discovery that the corporate charter of Michael Thomas, P.C. had been forfeited. She requested the right to reopen the evidence to introduce evidence of the forfeiture. On March 11, the court held a hearing on the motion to reopen evidence and for sanctions and attorney's fees. The court granted the motion on March 25. On April 26, the court entered the turnover order and sanctions, and permitted Diana to immediately withdraw the funds from the registry of the court.

Michael, Amy, and Michael Thomas, P.C. all bring points of error in this appeal.[2] However, Diana claims that this court lacks the jurisdiction to hear the corporation's appeal. At trial, it was not a party to the suit, nor was judgment rendered against it. Michael and Amy both filed separate cost bonds to preserve their appeals. However, the corporation did not execute an appeal bond, nor was it included as a principal on the cost bond of either Michael or Amy. *See* TEX. R.APP.P. 40(a) (stating that a party must file a timely cost bond to preserve appeal).

■ Appeal bonds are to be liberally construed. *Shults v. State*, 682 S.W.2d 260, 261 (Tex.1984). Multiple appellants may perfect an appeal by filing one bond on behalf of all appellants. *Ramirez v. Pecan Deluxe Candy*, 839 S.W.2d 101, 104 (Tex.App.—Dallas 1992, writ denied). The law is well settled that our jurisdiction is invoked by the timely filing of the original bond, even though it is defective or insufficient. *Pollak v. Metroplex Consumer Ctr., Inc.*, 722 S.W.2d 512, 514 (Tex.App.—Dallas 1986, no writ). An appellant who shows that he was omitted from the cost bond because of mistake or accident is entitled to amend the bond by adding his name to it.[3] *Powell v. City of McKinney*, 711 S.W.2d 69, 70 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) However, we

do not have jurisdiction over a co-appellant who files a *separate* late bond that does not amend a prior timely appeal bond. *Pollak*, 722 S.W.2d at 514.

■ We may not dismiss an appeal for procedural defects of form or substance without allowing a reasonable opportunity to correct the defect. TEX.R.APP.P. 83; *See Woods Explor. & Producing Co. v. Arkla Equip. Co.*, 528 S.W.2d 568, 570 (Tex.1975). After being informed by this court that the corporation had not properly perfected its appeal, we gave Michael Thomas, P.C. fifteen days to amend the cost bond[4] of either Michael or Amy by adding the corporation's name to it and providing affidavits that the original omission of the corporation from the cost bond was due to accident or mistake. Michael, apparently acting on the behalf of Michael Thomas, P.C., asked for an extension of time to file the amended bond which this court granted. We granted the motion to amend on November 29, 1995, and Diana filed a motion to dismiss the appeal on December 4, 1995.

The corporation has failed to perfect its appeal for the second time. In response to our invitation to Michael Thomas, P.C. to amend one of the timely filed appeal bonds to include itself, the corporation filed a supplemental transcript that consisted of a separate bond. While amending a bond of a party already properly before the court can give us jurisdiction over the amending party, filing a separate bond has the practical effect of filing an untimely bond which ultimately denies this court jurisdiction over that party. *See Ramirez*, 839 S.W.2d at 104 (stating that an appellate court has no jurisdiction over attempted appeals by co-appellants who have not timely filed a bond).

■ In addition, even if Michael Thomas, P.C. had filed an amended bond, the corpora-

---

2. Michael, Amy, and Michael Thomas, P.C. jointly filed a brief. However, not every point applies to each party.

3. The rule allowing amendment applies even when the person executing the original cost bond was not a proper party on appeal. *See Shults v. State*, 682 S.W.2d 260, 260–61 (Tex.1984) (holding that the sole shareholder of a corporation, who executed the cost bond only in his name,

had no standing to appeal but the corporation should have been allowed to amend the bond).

4. Rule 46(f) of the Texas Rules of Appellate Procedure states that the appellate court "may allow the filing of a new bond ... on such terms as the appellate court may prescribe." TEX.R.APP.P. 46(f).

tion did not perfect its appeal because it failed to prove through affidavits or other information that the corporation was omitted from the original cost bond of either Michael or Amy because of *mistake* or *accident. See Powell*, 711 S.W.2d at 70 (holding that a party who *establishes* that he was inadvertently omitted from the jurisdiction-invoking cost bond has the right to amend the bond by adding his name to it).

■ Providing a party a forum to adjudicate its interests is an important principle of our judicial system. We will allow a party a reasonable opportunity to correct procedural defects in order to perfect an appeal. However, failure to comply with the rules squanders the time and resources of the parties as well as this court. Michael Thomas, P.C. has twice failed to perfect its appeal. We believe the corporation was given a more than reasonable opportunity to correct the defect. Accordingly, we find that the cost bond of Michael Thomas, P.C. is insufficient to invoke the jurisdiction of this court. Because we cannot consider the appeal of any party not properly before the court, we dismiss its appeal for want of jurisdiction. Furthermore, because neither Michael nor Amy have standing to argue points for the corporation, we will not consider any of the arguments they have raised on its behalf.

In Michael's and Amy's first point of error, they claim that the trial court erred in granting Rule 13 sanctions against them because its order did not state the "particulars of good cause" required to impose these sanctions.

Rule 13 provides:

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for *good cause, the particulars of which must be stated in the sanctions order.*

TEX.R.CIV.P. 13 (emphasis added).

■ The imposition of Rule 13 sanctions is within the sound discretion of the trial court. *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.—Dallas 1994, writ denied). We will only set aside a sanction upon a clear showing of an abuse of discretion by

the trial court. *See Shook v. Gilmore & Tatge Mfg. Co.*, 851 S.W.2d 887, 890 (Tex. App.—Waco 1993, writ denied). Whenever a rule of procedure is clear and unambiguous, we construe the language of the rule according to its literal meaning. *Friedman & Assoc., P.C. v. Beltline Road, Ltd.*, 861 S.W.2d 1, 3 (Tex.App.—Dallas 1993, writ dism'd by agrmt.).

■ The trial court did not state the particulars in the order showing that there was good cause to impose the sanctions. The Texas Supreme Court has held that sanctions must be weighed carefully and imposed only in an appropriate manner when justified by the circumstances. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). Rule 13 imposes a duty upon the trial court to justify the imposition of sanctions by specifically stating in the order the reason a party is being sanctioned. *Friedman*, 861 S.W.2d at 3. Compliance with the requirements of Rule 13 is mandatory. *Id.*

■ The requirement of particularity is important for three reasons. First, it ensures that the court is held accountable to adhering to the standard of the rule. *Id.* at 2. Second, it requires a trial court to reflect carefully before entering sanctions against a party. *Id.* And third, it serves the purpose of informing the offending party which conduct has been deemed offensive. *Id.* at 2–3. This puts the parties on notice of what conduct is and is not acceptable, and they can refrain from committing the same or similar conduct in the future. *Id.* Thus, failure by a trial court to comply with the language of Rule 13 is an abuse of discretion that renders the order unenforceable and warrants a reversal. *See id.* at 3.

■ It is clear that the trial court did not follow the requirements of the rule. The order states:

Having considered the pleadings, evidence, arguments and briefs of counsel, the Court finds that Movant's Motion for Sanctions should be granted. IT IS THEREFORE ORDERED that Movant shall have and recover from Hubert Michael Thomas and Amy Thomas, jointly and severally, the

sum of $2,591.00 as sanctions for violation of Rule 13 of the Texas Rules of Civil Procedure.

IT IS FURTHER ORDERED AND DE-CREED that Movant shall have and recover from Respondent the sum of $5,000.00 in the event that Respondent prosecutes an appeal of this action to the Court of Appeals and Movant prevails on appeal.

IT IS FURTHER ORDERED AND DE-CREED that Movant shall have and recover from Respondent the sum of $5,000.00 if Respondent prosecutes an appeal of this case to the Supreme Court and Movant prevails on appeal.

We find that the trial court's failure to state the particulars of good cause in the order amounts to non-compliance with the rule. *See id.* at 3; *GTE Communications Systems Corp. v. Curry,* 819 S.W.2d 652, 654 (Tex.App.—San Antonio 1991, no writ); *Kahn v. Garcia,* 816 S.W.2d 131, 132–33 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Watkins v. Pearson,* 795 S.W.2d 257, 260 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (all holding that failure to state the particulars of good cause in a sanction order renders it unenforceable against that party); *but see Campos v. Ysleta Gen. Hosp., Inc.,* 879 S.W.2d 67, 70–71 (Tex. App.—El Paso 1994, writ denied) (holding that the appeal is abated for 30 days to allow the trial court to properly state the particulars of good cause for sanctions). We hold that the trial court's sanction order of $2,591 in damages and contingent attorney's fees of $10,000 is unenforceable against either Michael or Amy.

■ Diana concedes that, while it is true that Rule 13 requires the trial court to state its findings with particularity, Michael and Amy failed to preserve the error for review under Rule 52(a) of the Texas Rules of Appellate Procedure.[5]

We find that the complaint was preserved for review. Judge Lawrence handed down the sanctions order at the same time he entered the permanent order for turnover.

Michael and Amy promptly filed a motion for new trial stating that the order did not provide the particulars of good cause for assessing the sanctions. They had no opportunity to object or obtain a ruling prior to entry of the sanctions order, and they properly preserved their right to appeal by filing a motion for new trial which specifically stated their complaint about the sanction order. Because the court did not comply with Rule 13, we sustain point one and set aside the trial court's sanctions order.

In their second point of error, Michael and Amy claim that the trial court abused its discretion in ordering sanctions because there is no evidence that they filed groundless pleadings in bad faith or to harass Diana. This second point is moot in light of our disposition of their first point of error.

■ In his sixth and seventh points of error, Michael claims that the trial court abused its discretion in granting ex parte turnover relief because it did not give him an opportunity to be heard, violated his state and federal rights to due process, and denied him a trial by jury.

■ Due process of law requires that an individual is entitled to notice and hearing before he is deprived of a property right. U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. Michael complains that the trial court granted the ex parte turnover order without notice or hearing. However, failure to provide prior notice and hearing before the issuance of a turnover order under section 31.002 does not compromise constitutional principles. *See Ex parte Johnson,* 654 S.W.2d 415, 418 (Tex.1983) (stating in dicta that notice and hearing prior to issuance of the turnover order is not required); *see Plaza Court, Ltd. v. West,* 879 S.W.2d 271, 276 (Tex.App.—Houston [14th Dist.] 1994, no writ) (holding that section 31.002 does not provide for notice to a defendant in turnover proceedings).

Section 31.002 provides a remedy which allows the trial court to enforce a prior order

---

5. Rule 52(a) states, "In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." TEX.R.APP.P. 52(a).

that has been refused or disobeyed. The judgment against Michael was subject to collection, and notice can be implied that the creditor would attempt to collect on the judgment. *See Ross v. 3D Tower Limited*, 824 S.W.2d 270, 272 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

While Michael's right to due process would be compromised in the absence of any kind of notice and hearing, such is not the case here. The trial court ordered the funds to be delivered into the registry of the court, set a hearing, and issued notice of the hearing to Michael to show cause why the funds should not subsequently be released to Diana. Only after the hearing was an order entered into the record and the funds released to Diana. We find that Michael was given proper notice and afforded a hearing and that his due process rights were not violated.

■ Michael also claims that he was denied the right to a trial by jury at the turnover proceeding. TEX. CONST. art. I, § 15. However, in order to preserve the right to trial by jury, a party must make a timely request for a jury and timely pay a jury fee. *See* TEX.R.CIV.P. 216; *Jacobs v. Adams*, 874 S.W.2d 166, 168 (Tex.App.—Houston [14th Dist.] 1994, no writ). Michael did not comply with the rule, and he has failed to cite us to any place in the record which shows that he requested a trial by jury. TEX.R.APP.P. 74(f). The original hearing was delayed from May 26, 1993, until November 10, 1993, and Michael had ample time to request a jury. His sixth and seventh points of error are overruled.

■ In his eighth point of error, Michael claims that the turnover order is void and unenforceable because it does not state with specificity the property subject to turnover. To be valid, a turnover order must be definite, clear, and concise in order to give the person to whom it is directed sufficient information as to his duties and should not be such as would call on him for interpretations, inferences, or conclusions. *See Bergman v. Bergman*, 828 S.W.2d 555, 557 (Tex.App.—El Paso 1992, no writ). The terms of the order specifically require Michael to:

deliver and pay to the Sheriff of Limestone County, Texas, all income, including past, present, and future income, derived from the law practice of Hubert Michael Thomas or from the business operated as Michael Thomas, P.C. as fees for legal services rendered by Hubert Michael Thomas, and that such funds shall be delivered to the sheriff immediately upon receipt by Hubert Michael Thomas or by Michael Thomas, P.C.

The description of the property to be turned over is sufficiently definite and concise. The order requires Michael to turn over all "fees for legal services" or "income derived from the law practice." These terms are self-explanatory and fees and income received from a law practice are non-exempt property subject to a turnover order. *See Ross*, 824 S.W.2d at 272. Michael claims that the order requires him to deposit into the registry of the court "past, present, and future income" without limitation, even if the full amount of the judgment had already been deposited. He also complains that the term "past income" is not sufficiently definite. He argues that "past income" could apply to any property, such as the deed to his homestead, because it was purchased with previously earned income. However, the order does not specifically require that Thomas turn over real estate or any other property just because it was bought with past income.

On review, we presume that the trial court acted within its authority, and therefore, could not have intended to divest Michael of exempt property such as his homestead, nor did the trial court require Michael to continue to deposit funds in the registry of the court without limit. We find that the order only refers specifically to non-exempt income or funds that he has derived from his law practice in the past, present, and future until the judgment has been satisfied.

Michael also argues that the turnover order was a violation of his due process rights because it required that $60,000 in legal fees earned by Michael as an employee of Michael Thomas, P.C. be turned over by Robert Hanley into the registry of the court. He claims the order constituted the garnishment of his wages, which are exempt from turnover.

TEX. CONST. art. 16, § 28. Michael claims that the $60,000 belongs to the corporation, and that the funds represent wages.

■ Because no findings of fact or conclusions of law were filed, we are unable to identify with precision the court's reasoning in ordering the $60,000 deposited into the registry of the court.[6] When findings of fact and conclusions of law are not properly requested and none are filed, the reviewing court will affirm the trial court's order if such can be done on any reasonable theory supported by the evidence and authorized by law. *Schoeffler v. Denton,* 813 S.W.2d 742, 744 (Tex.App.—Houston [14th Dist.] 1991, no writ).

Diana is apparently arguing two alternative theories that entitle her to the funds. She attempts to argue that the trial court pierced the corporate veil and, therefore, any money earned by Michael or the corporation belongs to the former by virtue of the corporation being the alter ego of the judgment debtor. In the alternative, she apparently argues that if Michael Thomas, P.C. is a corporation, then Diana is entitled to the fees because they were earned by Michael.

With regard to the first alternative, although some evidence was produced at trial concerning the validity of the corporate fiction, we need not find that the trial court pierced the corporate veil in order to dispose of this point. *See Hickman v. Rawls,* 638 S.W.2d 100, 102 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (stating that courts will disregard the corporate fiction only in "extraordinary" situations).

■ With regard to the second alternative, Diana cites the rule that the turnover statute may be used to obtain property from third parties so long as the property is subject to the possession of the judgment debtor. *Norsul Oil and Mining Ltd. v. Commercial Equipment Leasing Co.,* 703 S.W.2d 345, 349 (Tex.App.—San Antonio 1985, no writ). While Diana cites the correct rule, she has failed to show that the funds are actually the property of the judgment debtor. Assuming that Michael Thomas, P.C. is a valid corporation, whatever fees Michael earns as an attorney belong to the corporation. Diana seeks to transform gross corporate income into the personal property of the judgment debtor, relying on the fact that Michael actually performed the legal work. However, she does not take into account the expenses, taxes and debts, among other costs that the corporation must first deduct from the gross income before it can be determined whether there is any net income. Moreover, there is no evidence in the record of the amount of compensation that Michael is entitled to for his work on this case.

We agree with Michael that if his actual wages were ordered to be turned over by his employer, Michael Thomas, P.C., it would be an unconstitutional garnishment of wages. However, no evidence appears in the record concerning the corporation turning over his wages.

Texas courts have consistently held that an attorney's accounts receivable of present or future, earned or unearned fees, are not exempt from enforcement under the turnover statute and are considered "present or future rights to property" as that phrase is used in section 31.002. *Ross,* 824 S.W.2d at 272. A professional corporation is a separate and distinct entity from an attorney who practices as a member of the firm, even if he is the sole shareholder of the corporation. Moreover, the attorney who has incorporated his law firm is in effect an employee of that separate entity, and therefore the $60,000 are the accounts receivable of the corporation. We find that the order by the trial court requiring Robert Hanley to turn over the funds earned by Michael as an employee of Michael Thomas, P.C. was a proper and constitutional use of the turnover mechanism because the funds belong to the corporation. We will not determine whether the turnover of the funds from the corporation was proper because the corporation is not properly be-

---

**6.** Michael timely filed a request for findings of fact and conclusions of law but failed to file a timely notice of past due findings of fact and conclusions of law. Failure to timely file past due notices under Rule 297 waives his right to findings of fact and conclusions of law. TEX. R.CIV.P. 297. According to the record, Michael did file a past due notice, but he mistakenly filed it in the wrong case.

fore us on appeal, and, as we have stated, Michael may not assert the rights of the corporation on appeal.

In his ninth point of error, Michael complains that the ex parte temporary order and the turnover order are void because they violate his constitutional right that no person be imprisoned for debt. TEX. CONST. art. I, § 18. Michael complains that the turnover order is now enforceable through contempt proceedings. We find nowhere in the record that a contempt order was ever entered against Michael, or that he was ever imprisoned for failure to comply with the turnover order. With regard to the funds still owed, we will presume that Michael will comply with the court's orders to turn over the requisite funds. Unless he does not comply with the court's orders, and is punished for failing to do so, this issue is not ripe for disposition. Thus, we do not reach the ninth point.

In their tenth point of error, Michael and Amy claim that the trial court abused its discretion in allowing the withdrawal of the funds on deposit in the registry of the court before the judgment became final. In their supplemental brief, they cite Rule 627 which states:

> If no supersedeas bond ... has been filed and approved, the clerk of the court or justice of the peace shall issue the execution upon such judgment upon application of the successful party or his attorney after the expiration of *thirty days* from the time a final judgment is signed.

TEX.R.CIV.P. 627 (emphasis added).

Michael and Amy claim that the judgment which enabled Diana to withdraw the funds was the turnover order and not the underlying judgment, and therefore, the withdrawal of funds on the day the turnover order was issued was error because thirty days had not passed. We agree.

The turnover proceeding was initiated for the purpose of collecting the original judgment against Michael. The post-judgment turnover order is an appealable final judgment. *Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas*, 810 S.W.2d 738, 738 (Tex.1991). Because we agree with Michael's contention that the judgment

sought to be enforced was the turnover order, we find that the trial court erred in failing to wait thirty days before releasing the funds under Rule 627. However, "premature issuance of a writ of execution does not render the writ void, but is merely an irregularity, and the writ is voidable only." *See Interstate Life Ins. Co. v. Arrington*, 307 S.W.2d 146, 148 (Tex.Civ.App.—Texarkana 1957, no writ).

While it is true that Michael did not have time to file a supersedeas bond, the end result is the same. Diana is entitled to the funds in the registry. Moreover, such a voidable writ cannot be collaterally attacked and may only be questioned in a direct proceeding instituted in the court which ordered it issued. *Id.* We overrule point ten.

In their eleventh and twelfth points of error, Michael and Amy claim the trial court abused its discretion in awarding attorney's fees of $5,560 because no credible evidence supports such an award and because the attorney's fees were incurred pursuing relief not afforded by the turnover statute.

The turnover statute provides that a "judgment creditor is entitled to recover reasonable costs, including attorney's fees." TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(e) (Vernon 1986). In the absence of findings of fact and conclusions of law, we will presume that the trial court found such facts as were necessary to support the judgment. *Schoeffler*, 813 S.W.2d at 744.

According to the Texas Supreme Court, the trial court's decision to award attorney's fees is reviewed for an abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). Under this standard, legal and factual sufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules or principles, or in other words, whether the court's actions were arbitrary and

unreasonable. *Id.; Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). The reasonableness of attorney's fees must be supported by some credible evidence. *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 606 (Tex.App.—Dallas 1990, no writ). The amount and reasonableness of attorney's fees is a question of fact involving several intangible factors. *Id.* at 606–07. The trier of fact can consider the nature and complexity of the case, the amount in controversy, as well as the amount of time and effort required and the expertise of counsel in arriving at a reasonable amount of attorney's fees. *Id.* at 607. Moreover, the trial judge can draw on his own expertise in his decision-making. *Id.*

■ Attorney's fees under the turnover statute are governed by the Texas Civil Practices and Remedies Code sections 38.001, 38.003, and 38.004. TEX.CIV.PRAC. & REM.CODE ANN. §§ 38.001, 38.003, 38.004 (Vernon 1986); *see Ross,* 824 S.W.2d at 273. In the absence of other evidence supporting an award of attorney's fees, the trial court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file in determining the amount of attorney's fees awarded. TEX.CIV.PRAC. & REM.CODE ANN. § 38.004. Moreover, there is a rebuttable presumption that the usual and customary fees for the work performed are reasonable. *Id.* at § 38.003. Judicial notice of the usual and customary fees constitutes some evidence on which a court may base an award of attorney's fees. *Long Trusts v. Atlantic Richfield Co.,* 893 S.W.2d 686, 688 (Tex.App.—Texarkana 1995, no writ). Moreover, a reviewing court may presume that the trial court took judicial notice of the attorney's fees, even where the trial court did not announce that it took notice. *Ross,* 824 S.W.2d at 273.

Diana's attorney submitted to the trial court an itemized list of services rendered to Diana. The list shows that Diana's attorney completed 55.6 hours of work on this aspect of the case at a fee of $100 an hour for a total of $5,560.

■ Michael argues that 31 of the hours Diana's attorney spent on the case involved defending Judge Black on the recusal proceeding, and therefore, the fees attributed to these hours are not related to the turnover action and are not "reasonable fees" recoverable under the statute.

We do not find any case law directly relevant to this point, nor did Michael provide any relevant authority. Nevertheless, we find that the defense of the trial judge was directly related to the turnover cause of action. As the original trial judge, Judge Black was intimately familiar with the facts of the case and the legal issues involved. To insure the quick disposition of her case, it is logical that Diana would desire that the original judge preside over the remainder of the case. We find that the fees attributed to Judge Black's defense constituted reasonable fees within the meaning of section 31.002.

Michael also argues in his brief that Diana's attorney's fees should be limited because of three specific factual situations. He claims that Diana is not entitled to attorney's fees because Judge Walker apparently stated at the recusal hearing that attorney's fees would be set at $1,000 if the ruling was affirmed on appeal. Michael also claims that Diana represented to the trial court in August 1993 that she had incurred only $2,589 in attorney's fees, and that from August until the time the case was originally submitted in November, only another $500 was spent according to the itemized list. And finally, he argues that the remaining attorney's fees were incurred in order to obtain turnover of legal fees earned by the corporation. However, Michael does not direct us to any place in the record that supports any of these facts, nor are we able to find any facts supporting these allegations; thus, we will not consider these arguments. TEX.R.APP.P. 74(f).

■ We find that the trial court took judicial notice of the record. Moreover, this judicial notice is some evidence that $5,560 was a reasonable amount for attorney's fees. Therefore, the trial court's award of $5,560 in

attorney's fees to Diana was not an abuse of discretion. The eleventh and twelfth points of error are overruled.

In his thirteenth and fourteenth points of error, Michael claims that the trial court erred in awarding a judgment in excess of $76,313 due to the tolling of interest and that the trial court erred in finding that the principal and interest due under the judgment totalled $80,475.52.

■ Michael also claims that a series of communications between the two parties in July 1993 constituted a settlement agreement and release of the judgment and of proceedings in this case.[7] We find that the letters sent by both parties were nothing more than vague offers and counter-offers to reach a settlement. No offer was ever accepted, nothing was signed, and there was no enforceable agreement to settle the case.

■ In the alternative, Michael claims that his settlement offer to pay the "full amount of the final judgment in the alimony case" was an unconditional offer that tolled the post-judgment interest on the amount of the judgment. Moreover, he argues that the full amount of his offer was in the registry of the court and that he is being penalized when the post-judgment interest is allowed to accrue. He claims that Diana was making excessive demands, which preclude her from recovering post-judgment interest or attorney's fees. See Findlay v. Cave, 611 S.W.2d 57, 58 (Tex.1981); Warrior Constructors v. Small Business Investment Co. of Houston, 536 S.W.2d 382, 386 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ).

■ When a defendant tenders payment for the full amount owed, and the plaintiff refuses to accept it and proceeds to trial, the defendant is not liable for the plaintiff's attorney's fees and subsequent interest. See Staff Indust., Inc. v. Hallmark Contracting, Inc., 846 S.W.2d 542, 548–49 (Tex.App—Corpus Christi 1993, no writ); J.M. Hollis Constr. Co., Inc. v. Paul Durham Co., 641 S.W.2d 354, 357–58 (Tex.App.—Corpus Christi 1982, no writ). However, a "tender" must be an unconditional offer by the debtor that pays the creditor the full amount due, and does not attach conditions which the debtor has no right to impose. Staff Indust., 846 S.W.2d at 548–49.

Michael's offer required that Diana relinquish all rights to pursue turnover proceedings. Diana had incurred attorney's fees of $5,560 in an attempt to collect on her final judgment that Michael offered to pay. Diana is entitled to recover reasonable costs, including attorney's fees, under the turnover statute. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002. Accepting Michael's settlement offer would preclude her from recovering these additional funds. See Staff Indust., 846 S.W.2d at 549. Therefore, we find that the settlement offer was not an unconditional offer, and the interest on the original judgment was not tolled.

Michael claims that sometime in May 1993, he offered to pay the judgment in installments, beginning with a partial payment of $50,000, with the balance to be paid as his income permitted, which Diana allegedly rejected. He claims that such an offer tolled the interest on the $50,000 from the date of the offer. We once again will not even consider the merits of this argument in the absence of any evidence in the record supporting this contention, not to mention Mi-

---

7. On August 23, 1993, Michael sent an offer to Diana to settle the case for the "full amount of the [f]inal [j]udgment in the alimony case, with the appropriate pre-judgment and post-judgment [interest], ... approximately $75,000" in exchange for a full release of the underlying judgment concerning alimony, the dismissal of the turnover proceedings, and the release of any other liens or post-judgment proceedings that have arisen out of the underlying alimony judgment.

Diana also apparently sent a settlement offer dated on the same day requesting $79,905 as the total amount due on the judgment.

Diana responded to Michael's August 23 offer on August 26 requesting "all monies owed relative to this judgment including $1,000 owed on the writ of mandamus." Michael replied on the same day stating that he would not pay the additional $1,000 and re-submitted his previous offer of August 23.

Diana responded on August 27 asking that Michael draw up settlement papers and sign them in order for her to see the terms of the proposed agreement before she signed anything. No other correspondence was presented concerning settlement.

chael's inability to cite any authority to support his position. TEX.R.APP.P. 74(f).

Finally, Michael claims that the trial court should have tolled the post-judgment interest on the dates that portions of the judgment were deposited into the registry of the court. Robert Hanley delivered $60,000 to the court on May 27, 1993, and Michael paid an additional $16,500 into the registry of the court on September 17, 1993. He cites no authority for this proposition, and, therefore, his point is waived. *Id.*

We reverse and set aside the order granting Rule 13 sanctions, and we affirm the trial court's judgment in all other respects.