In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00048-CV


______________________________




LYNWOOD LESIKAR AND HARRIET LEWIS LESIKAR, ET AL., Appellants



V.



JENNY LOU LEWIS RAPPEPORT, INDIVIDUALLY AND AS 
REPRESENTATIVE OF THE BENEFICIARIES OF THE 

ESTATE OF H. G. LEWIS, JR., ET AL., Appellees




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court Nos. 92-2292-A-1 and 94-2369-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 The trial court issued a final judgment for turnover and dismissed Lynwood and Harriet
Lesikar's counterclaim with prejudice. On appeal, the Lesikars bring the following points of error: 
(1) the turnover order was improper because it substantially changed the parties' rights; (2) even if
the turnover was proper, the trial court erred by failing to give the Lesikars credit for monies paid
for operational expenses and taxes; (3) the trial court did not have jurisdiction to dismiss their
counterclaim with prejudice; and (4) the trial court erred by awarding against Harriet Lesikar the
attorney's fees and the other sum Lynwood was required to return.

 In 1935, H. G. Lewis bought the working interest in the T. W. Lee oil lease (herein, the
"Lease") and assigned half of the interest to J. C. Robbins. Lesikar v. Rappeport, 33 S.W.3d 282,
290 (Tex. App.-Texarkana 2000, pet. denied). In 1964, Lewis and Robbins assigned to the Clark,
Thomas, Winters & Shapiro law firm (herein, the "Clark Firm"), a one-sixth (1) working interest in oil
wells 2 and 5 on the Lease. Lewis operated the entire Lease under the name L & G Oil Company
(herein, "L&G") until his death in 1980. In his last will and testament, he named his two daughters,
Jenny Rappeport and Harriet Lesikar, co-independent executrices of his estate (herein, the "Estate")
and gave them each an undivided fifty percent interest in the Estate for life with remainders to their
children. 

 In 1985, the Clark Firm determined it had been receiving payments from wells 3A and 7A
on the Lease, although it held an interest in only wells 2 and 5. The Clark Firm notified L&G, and
while L&G acknowledged the Clark Firm did not own an interest in wells 3A or 7A, L&G continued
to bill the Clark Firm for operating expenses associated with wells 3A and 7A and continued to pay
the firm as though it owned an interest in those wells. 

 In 1992, Harriet Lesikar, with her husband Lynwood, sued Jenny Lou Lewis Rappeport,
individually and as representative of the Estate, seeking a declaratory judgment as to each party's
ownership in the Estate and further seeking an accounting. In 1993, the Lesikars added the Clark
Firm as a defendant, seeking to recover under a theory of unjust enrichment based on the
overpayments the Estate had made attributable to wells 3A and 7A. In exchange for subsequently
dismissing the Clark Firm from the lawsuit, however, the Lesikars, without Rappeport's knowledge,
acquired the Clark Firm's interest in wells 2 and 5 on August 9, 1994. Eventually, the Lesikars
settled the remainder of the suit, and it was dismissed. 

 On learning of the Lesikars' acquisition of the Clark Firm interest, Rappeport brought the
underlying lawsuit, alleging the Lesikars were guilty of fraud and breach of fiduciary duty because
they converted to their own use income from estate property. The trial court ruled in Rappeport's
favor, and this Court affirmed the trial court's judgment with slight modifications. According to that
judgment, as so modified, Rappeport was entitled to the following:



 Actual Damages: $ 26,122.00

 Prejudgment Interest: 38,245.22

 Attorney's Fees: 298,444.00

 Punitive Damages: 800,000.00 

 TOTAL $1,162,811.22


In  addition,  the  final  judgment  decreed  that  any  net  revenue  in  the  Clark  Firm  interest  in
wells 2 and 5 be held in constructive trust for the benefit of Rappeport, individually and as
representative of the Estate,

 [T]ogether with all income generated by such interest from August 9, 1994, and any
other benefits held, claimed or acquired by Lynwood Lesikar, as a result of or arising
out of the assignment of August 9, 1994, to Lynwood Lesikar and the benefits of any
agreements, settlements, assignments and/or releases relating to the T.W. Lee Lease
and any overpayments attributable to interest in the T.W. Lee Lease made by
Lynwood Lesikar and/or Harriet Lesikar with John Robbins . . . .


The judgment also stated that all funds located in the court's registry, constituting production
revenues from the Clark Firm interest, were to be made part of the constructive trust, and the clerk
of the trial court was ordered to distribute those funds to Rappeport and Harriet in accordance with
their father's will. (2)

 After the judgment was entered, the Lesikars superseded it with a letter of credit issued by
Banker's Trust Company. Once the judgment became final, Rappeport drew on that letter of credit
to satisfy the portion of the judgment representing the $1,162,811.22 plus interest (herein, the
"Money Judgment"). Remaining unsatisfied, however, was the other portion of the judgment 
ordering that designated funds, located and to be located in the court's registry, were to be held in
constructive trust (herein, the "Constructive Trust"). To collect on the Constructive Trust, Rappeport
requested a turnover order. After an accounting and a hearing, the trial court found that Lynwood
Lesikar had wrongfully withdrawn $48,342.97 from the court's registry, and it ordered him to return
those funds. The trial court also ordered the following distribution: 

 The current balance in the registry of the Court being $177,567.38 divided by two
equals $88,784.00 less $7,799.00 being Jenny's unpaid portion of her one-half of the
cost of appeal in accordance with the mandate above referenced, less $6,894.78
representing a credit of one-half of $13,789.56 previously withdrawn from the
registry of the Court by Jenny of outstanding expenses attributable to the mineral
interest placed in the constructive trust, plus the sum of $24,171.00 representing one-half of the $48,342.97 identified in 1 above, plus Jenny's reasonable and necessary
attorney's fees in the amount of $12,146.00.


Based on that distribution, the court awarded Rappeport $110,406.70, and Harriet was awarded the
remainder. The Lesikars appeal. 

Rights Substantively Changed?

 In their first point of error, the Lesikars contend the turnover order was improper because it
substantively changed the parties' rights. Under the Texas Civil Practice and Remedies Code, a
judgment creditor is entitled to assistance from the court in obtaining satisfaction of a judgment if
the judgment debtor owns property that "(1) cannot be readily attached or levied on by ordinary legal
process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of
liabilities." Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp. 2003). Further, a turnover
order is merely a procedural mechanism used to aid in the collection of a judgment; it cannot be used
to change the substantive rights of the parties. Ex parte Swate, 922 S.W.2d 122, 125 (Tex. 1996)
(Gonzalez, J., concurring); Cross, Kieschnick & Co. v. Johnston, 892 S.W.2d 435, 439 (Tex.
App.-San Antonio 1994, no writ); United Bank Metro v. Plains Overseas Group, Inc., 670 S.W.2d
281, 284 (Tex. App.-Houston [1st Dist.] 1983, no writ). 

 The trial court's underlying judgment expressly held that "to the extent of leasehold interest
therein standing in the name of [the Clark Firm], or attributable to the [Clark] law firm the same
being a 0.1042050 net revenue interest in the entire lease is held in constructive trust for the benefit
of Jenny Lou Lewis Rappeport . . . ." On appeal, this Court modified the judgment to read that all
net revenue from the Clark Firm interest in wells 2 and 5 shall be held in the Constructive Trust.

 The Lesikars contend the Clark Firm interest in wells 2 and 5 produced less proceeds than
the Clark Firm interest representing 0.1042050 of the entire Lease and that, therefore, before the
modification, they had paid more into the trial court's registry than what was ultimately required
under the judgment as modified by this Court. The Lesikars conclude that the trial court's turnover
order, by failing to return those alleged overpayments to the Lesikars, substantively changed the
parties' rights. We disagree.

 On August 9, 1994, Lynwood Lesikar was assigned the Clark Firm interest in wells 2 and 5. 
There is no evidence or assertion that any proceeds the Lesikars received, or were directed to hold,
in constructive trust were other than those obtained pursuant to the 1994 assignment. Therefore, the
only evidence suggests the proceeds the Lesikars paid into the court's registry were only those
derived from the Clark Firm interest in wells 2 and 5, which is precisely the amount ordered held in
constructive trust. The contention the Lesikars now are entitled to more than they ever received or
paid into the registry of the court is in direct contradiction with the terms of the judgment, and the
Lesikars have failed to present any evidence in support of their contention.

 At the time the turnover was requested, the Lesikars were in possession of nonexempt
property  in  the  form  of  proceeds  from  wells  2  and  5.  See  Tex.  Civ.  Prac.  &  Rem.  Code
Ann. § 31.002. Further, the property could not be readily levied upon, because without an
accounting Rappeport had no way of affirmatively identifying the amount or location of those
proceeds. See id. The Lesikars have failed to present any evidence that the turnover order was
improper or that it was sought for anything other than the enforcement of the underlying judgment. 
With respect to the turnover, the parties' rights have not been substantively changed. We overrule
the Lesikars' first point of error.

Due Credits Denied? 

 In their next point of error, the Lesikars contend the trial court erred by ordering them to turn
over funds without giving certain credits in their favor. When an appellate court renders judgment,
the trial court has no jurisdiction to review or interpret it, but rather, must enforce it as rendered.
Harris County Children's Protective Servs. v. Olvera, 971 S.W.2d 172, 175-76 (Tex. App.-Houston
[14th Dist.] 1998, pet. denied); Myers v. Myers, 515 S.W.2d 334, 335 (Tex. App.-Houston [1st
Dist.] 1974, writ dism'd). 

 The modified judgment issued by this Court provided that all proceeds received by Lynwood
Lesikar as a result of the August 9, 1994, assignment of the Clark Firm interest in wells 2 and 5 of
the Lease were to be held in the Constructive Trust for the benefit of Rappeport, individually and as
representative of the Estate, and were to be distributed half to Rappeport and half to Harriet. 
Lesikar, 33 S.W.3d at 304. The judgment also ordered that all funds located in the court's registry,
constituting production revenues from the Clark Firm interest, were to become part of the
Constructive Trust and be distributed in the same manner. Under the terms of the judgment, the
Lesikars are not entitled to any credits and do not have any right of ownership in the proceeds held
in the Constructive Trust. The judgment called for the delivery of all proceeds without exception. 
Accordingly, the trial court was bound by the underlying judgment and had no authority to deviate
from its express terms. See Cross, Kieschnick & Co., 892 S.W.2d at 439; Olvera, 971 S.W.2d at
175.

 In addition, the Lesikars are barred by res judicata from asserting that they are entitled to a
credit or that they have any ownership right in the funds held in the Constructive Trust. Res judicata
precludes the relitigation of claims that have been finally adjudicated in a prior action, as well as
claims that pertain to the same subject matter and could have been, but were not, litigated. Amstadt
v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996); Freeman v. Cherokee Water Co.,
11 S.W.3d 480, 483 (Tex. App.-Texarkana 2000, pet. denied). In Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 631 (Tex. 1992), the Texas Supreme Court held in pertinent part: 

 The scope of res judicata is not limited to matters actually litigated; the judgment in
the first suit precludes a second action by the parties and their privies not only on
matters actually litigated, but also on causes of action or defenses which arise out of
the same subject matter and which might have been litigated in the first suit.


Id. at 630 (citing Tex. Water Rights Comm'n v. Crow Iron Works, 582 S.W.2d 768, 771-72 (Tex.
1979)) (emphasis added). Additionally, the Texas Supreme Court in Barr held that a determination
of what constitutes the same subject matter requires a factual analysis of the previous lawsuit, and
any cause of action which arises out of those same set of facts should have been litigated. Id. 

 The underlying lawsuit was brought to determine the rights of the parties with respect to the
Clark Firm interest in wells 2 and 5 and the proceeds therefrom. Rappeport, 33 S.W.3d at 291. The
judgment from that suit awarded Rappeport half of all proceeds received by Lynwood Lesikar from
the Clark Firm interest and half of all the funds located in the court's registry. The remainder was
to be distributed to Harriet. Any attempt by the Lesikars now to claim an enlarged ownership interest
in those funds would constitute a redetermination of matters that were actually litigated in the
underlying lawsuit. See Barr, 837 S.W.2d at 630. (3) Therefore, because any assertion seeking credits
or ownership rights in the funds held in the Constructive Trust arises out of the same subject matter
as the previous lawsuit, the Lesikars are barred by res judicata from bringing those claims in this
proceeding. See id. We overrule the second point of error.

Dismissal with Prejudice Proper?

 In their next point of error, the Lesikars contend the trial court erred by dismissing their
counterclaim with prejudice. In their counterclaim, the Lesikars contended they were entitled to a
reimbursement because Rappeport received more than her entitlement under the actual damages
portion of the judgment. Before we reach their point of error, however, a brief review of the facts
is necessary. 

 After the trial court rendered the underlying judgment, but before this Court issued its
opinion, the Lesikars filed a supersedeas bond in the form of a letter of credit from Banker's Trust
Company. After this Court rendered its opinion and the Texas Supreme Court denied the petition
for review, Rappeport presented a draft on the letter of credit in the amount of $1,652,669.23. In
their counterclaim, the Lesikars contended that the actual damages portion of the judgment, after
postjudgment interest had been added, amounted to $1,534,179.56, which resulted in an
overpayment of $122,389.78. Rappeport argues the Lesikars were not entitled to a reimbursement
because they failed to establish the exact amount of the overpayment. The Lesikars contended in
their counterclaim the overpayment was $122,389.78, while in their motion to modify the turnover
order they contended it was $142,382.18. 

 Because Rappeport does not dispute an overpayment was made, the only two questions in
contention are whether the trial court should have considered the counterclaim, and if not, whether
the trial court had authority to dismiss the counterclaim with prejudice. In Steenland v. Texas
Commerce Bank National Association, 648 S.W.2d 387, 389 (Tex. App.-Tyler 1983, writ ref'd
n.r.e.), Steenland disputed the validity of a turnover order. Specifically, the bank obtained a final
judgment against Steenland in the amount of $511,996.62 and sought to collect on that judgment by
filing a motion for a turnover order. (4) The bank sought an order authorizing the use of excess
nonexempt funds from the sale of Steenland's homestead to satisfy the judgment. Steenland argued
he was entitled to a hearing to determine whether his homestead had nonexempt excess value that
could be used to satisfy the judgment. The court held that a turnover proceeding is purely a
procedural mechanism used to assist the judgment creditor in collecting a judgment and that it could
not be used as a vehicle to determine the parties' rights, even though a determination of those rights
would result in the satisfaction of the judgment. The court held the bank was required to secure a
determination, in a separate proceeding, of whether the home had nonexempt excess value before
seeking a turnover order. Id.

 In the present case, a final judgment has been rendered, and a determination of the amount
of overpayment would result in the satisfaction of the Money Judgment. In Steenland, the court held
that a turnover proceeding cannot be used as a vehicle to determine the parties' rights, and the bank
was required to secure a determination of the value of the homestead before it could file a motion
for a turnover order. Id. The judgment, however, involved the collection of only a single monetary
award. In the present case, the underlying judgment awarded Rappeport, individually and as
representative of the Estate, both a monetary award of roughly $1.5 million and all of the funds held
in constructive trust. Rappeport brought this action solely for the turnover of the funds held in
constructive trust. On the other hand, the Lesikars seek a reimbursement of funds given to
Rappeport in satisfaction of the actual damages portion of the judgment. In effect, the Lesikars
thereby attempt to put themselves in the shoes of a judgment creditor with respect to that portion of
the judgment. But the Lesikars cannot "put the cart before the horse." Before the trial court can
render judgment on the Lesikars' counterclaim in a turnover proceeding, the Lesikars are required
to secure a factual determination of how much overpayment Rappeport received, and such a
determination would be outside the scope of a turnover proceeding. See Tex. Civ. Prac. & Rem.
Code Ann. § 31.002; Cross, Kieschnick & Co., 892 S.W.2d at 439; see also Swate, 922 S.W.2d at
125. A turnover proceeding, however, is purely a procedural mechanism. Thus, the trial court
abused its discretion by dismissing the counterclaim with prejudice, because that would substantively
change the parties' rights. See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). 
Therefore, while Rappeport is entitled to a turnover order in this case, the Lesikars should not have
been precluded by the trial court from seeking relief elsewhere for any reimbursement claim based
on an alleged overpayment of the Money Judgment.

Proper Funds Allocation? 

 In their next point of error, the Lesikars contend the trial court erred by awarding attorney's
fees, and in the alternative, the trial court erred by assessing attorney's fees against Harriet Lesikar's
separate property. The Lesikars' assertion that the trial court erred by awarding attorney's fees is
dependent on their claim that the turnover order was improper. As previously discussed, however,
Rappeport was successful in obtaining a turnover order, and it is well established that a judgment
creditor that is successful in a turnover proceeding is entitled to attorney's fees. Tex. Civ. Prac. &
Rem. Code Ann. § 31.002; Great Global Assurance Co. v. Keltex Prop., Inc., 904 S.W.2d 771, 776
(Tex. App.-Corpus Christi 1995, no writ); Boudreaux Civic Ass'n v. Cox, 882 S.W.2d 543, 550
(Tex. App.-Houston [1st Dist.] 1994, no writ); Daniels v. Pecan Valley Ranch, Inc., 831 S.W.2d
372, 386 (Tex. App.-San Antonio 1992, writ denied) (judgment creditor who obtains turnover relief
entitled to reasonable costs, including attorney's fees). Further, in its judgment, the trial court took
judicial notice of the reasonableness and necessity of the attorney's fees; therefore, the award was
proper. See Thomas v. Thomas, 917 S.W.2d 425, 437 (Tex. App.-Waco 1996, no writ).

 The Lesikars also contend the trial court erred by assessing against Harriet's portion of the
Constructive Trust (1) the award of attorney's fees and (2) the funds to be placed back into the court's
registry by Lynwood Lesikar. The Lesikars argue that those funds should have been derived from
another source, not Harriet's separate property. The parties, however, expressly agreed at trial the
Lesikars would "write one check" for the total amount of the judgment, rather than depositing funds
into the court's registry only to have them distributed in accordance with the judgment. Essentially,
the Lesikars agreed to pay the total amount of the judgment out of Harriet's portion of the
Constructive Trust. Pursuant to the parties' agreement, the court made the following distribution: 
 [T]he current balance in the registry of the Court being $177,567.38 divided by two
equals $88,784.00 less $7,799.00 being Jenny's unpaid portion of her one-half of the
cost of appeal in accordance with the mandate above referenced, less $6,894.78
representing a credit of one-half of $13,789.56 previously withdrawn from the
registry of the Court by Jenny of outstanding expenses attributable to the mineral
interest placed in the constructive trust, plus the sum of $24,171.00 representing one-half of the $48,342.97, which was to be returned to the court's registry pursuant to the
turnover order, plus Jenny's reasonable and necessary attorney's fees in the amount
of $12,146.00. 

Based on those calculations, the trial court ordered that $110,406.70 be distributed to Rappeport and
the remaining $67,160.68 to Harriet. The trial court, however, inadvertently made a small
mathematical mistake in its calculation. Under the proper calculation, Rappeport is entitled to
$110,407.39, and Harriet to $67,159.99.







 For the reasons stated, we hereby modify the trial court's judgment to reflect that (1) the
above adjusted amounts are to be distributed, and (2) the Lesikars' counterclaim is dismissed without
prejudice. As so modified, we affirm the trial court's judgment. See Tex. R. App. P. 43.2. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 20, 2003

Date Decided: April 29, 2003

1. The interest consisted of a one-twelfth interest from each of Lewis and Robbins.
2. Because of this dispute over the ownership of the proceeds from the Lease, CITGO, as
purchaser of the production from the Lease, being unable to determine the validity of the adverse
claims, placed those proceeds attributed to interests in the land in conflict into the registry of the
court.
3. Special question 23 asked, "What sum of money, if any, do you find would fairly and
reasonably compensate Lynwood Lesikar for his damages and losses that were proximately caused
by Jenny Lou Rappeport on the occasion in question, if any?" The jury answered $0.00. Lesikar v.
Rappeport, 33 S.W.3d 282, 295 (Tex. App.-Texarkana 2000, pet. denied).
4. The bank sought this order under the old turnover provision, Article 3827a, which, for the
purposes of this case, is identical to the current turnover provision, Texas Civil Practice and
Remedies Code 31.002. See Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp. 2003).