Leon **MARTIN** d/b/a Martin Apparatus and Equipment, Appellant,

v.

**HARRIS COUNTY APPRAISAL DISTRICT and Harris County Appraisal Review Board, Appellees.**

No. 14–99–01091–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 22, 2001.

Rehearing Overruled May 3, 2001.

---

J. Randolph Burton, Houston, for appellants.

Mario L. "Dell" Osso, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and WITTIG.

## MAJORITY OPINION

WITTIG, Justice.

The appellant, Leon Martin, is a marketing agent for an out-of-state manufacturer of fire trucks. Martin takes bare legal title to the trucks from the manufacturer before immediately transferring title to the equitable owner. Harris County Appraisal District and Harris County Appraisal Review Board (collectively "HCAD") assessed inventory taxes against Martin as "owner" as a result of these transactions. Martin protested, lost and filed suit. Both parties moved for summary judgment. The trial court granted summary judgment for HCAD and denied summary judgment for Martin. In this appeal, we determine whether Martin was the owner of the trucks for purposes of taxation. We also determine whether Martin is entitled to recovery of his attorney's fees. We hold Martin was not properly taxed as the owner of the fire trucks, but that he is not entitled to recovery of statutory attorney's fees. We thus affirm in part and reverse and render in part.

## Background

Appellant is the sole proprietor of Martin Apparatus and Equipment. Since 1980, he has represented Pierce Manufacturing, a Wisconsin corporation, which makes fire trucks and related firefighting equipment (sometimes collectively referred to as "vehicles" or "trucks"). The agreement between Pierce and Martin allows Martin to represent Pierce in sales transactions in his territory and expressly states that Martin's authority is "limited strictly to solicitation of orders on behalf of Pierce and the promotion and sales of Pierce . . . ." Martin has no authority to purchase Pierce's vehicles for resale. Martin holds a "franchised new motor vehicle license," a "dealer's general distinguishing number," and a "representative's license," the last of which authorizes him to represent several other manufacturers. In addition to Martin, Pierce has two other manufacturer's representatives in Texas that handle sales in different territories. All the purchasers of the trucks are governmental units, such as municipalities, counties, and volunteer fire departments. Pierce issues bid proposals directly to prospective purchasers, and the resulting contracts are entered into only between Pierce and the purchaser. The equipment is custom-manufactured to the purchaser's specifications and is usually shipped directly to the purchaser from Pierce's Wisconsin facility or is picked up by the purchaser at the Pierce facility. When the sale is consummated, the purchaser pays the sales price directly to Pierce. Martin is paid by commission only. He does not carry the equipment on his books as an asset and has no right of control or equitable ownership in the equipment.

In 1996, the Texas Department of Transportation (TXDOT) notified Pierce that it could no longer issue a Manufacturer's Statement of Origin (MSO) directly to

the purchaser. TXDOT then required Pierce to issue MSOs to a franchised Texas dealer who would, in turn, transfer it to the original purchaser. TXDOT also instructed Martin to obtain a franchised dealer's license. Since then, Martin has taken bare legal title from Pierce, in the form of the MSO, and immediately transferred it to the original purchaser. The purchaser then files the MSO and applies for an original certificate of title.

Tax year 1997, which is based on 1996 sales, is the only period at issue. That year, Pierce sold 27 firefighting vehicles through Martin as its sales representative. Only two of these vehicles stopped at Martin's facility. The reasons for the stops were for tasks such as fueling, washing, and performing minor repair work. Martin's facility consists of a 2,500 square foot office/warehouse building and a temporary storage yard for a maximum of five vehicles. Martin maintains non-dealer garage liability insurance for "incidental storage."

HCAD assessed ad valorem personal property taxes against Martin for these 27 sales as his "dealer's motor vehicle inventory." Martin protested the assessment and lost. He then appealed to the district court. Both parties moved for summary judgment, with the trial court granting summary judgment in favor of HCAD. Martin now appeals.

### Standard of Review

■ The party with the burden of proof who seeks summary judgment must prove it is entitled to judgment by establishing each element of its claim or defense as a matter of law, or by negating an element of claim or defense of the opposing party as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). When, as here, both parties move for summary judgment, each party must carry their own burden as movant, and we consider all of the summary judgment proof accompanying both motions. *City of Houston v. McDonald*, 946 S.W.2d 419, 420 (Tex.App.—Houston [14th Dist.] 1997, writ denied).

### Was Martin the "Owner" of the Trucks Held for "Sale"?

Martin raises several issues. However, the ownership/sale issue is dispositive of whether he was properly taxed. Tex. R.App. P. 47.1.

■ First, we briefly address whether Martin is a dealer as that term is defined in the tax code. It defines dealer, in relevant part, as: "a person who holds a dealer's general distinguishing number issued by the Texas Department of Transportation under the authority of Chapter 503, Transportation Code...." Tex. Tax Code Ann. § 23.121(a)(3) (Vernon Supp.2000). Though only in response to TXDOT's requirement, Martin did obtain the dealer's general distinguishing number. Thus, for purposes of this appeal, we find that Martin is technically a "dealer" as defined by the Transportation Code.

■ Next, we turn to the question of whether Martin is properly characterized as an owner of the trucks. The tax code defines "owner" as "a dealer who owes current year vehicle inventory taxes against a dealer's motor vehicle inventory." Tex. Tax Code Ann. § 23.121(a)(9). We agree with Martin that this is a circular definition of owner—it presupposes he may owe inventory taxes. It requires us to refer back to other relevant terms of the tax code such as "sale" and "dealer's motor vehicle inventory." Pursuant to the tax code, a dealer is taxed according to "[d]ealer's motor vehicle inventory" which is "all motor vehicles held for sale by a dealer." *Id.* at § 23.121(a)(4). The code further provides, "For the purpose of the

computation of property tax, the market value of a dealer's motor vehicle inventory on January 1 is the total annual sales from the dealer's motor vehicle inventory ... for the 12 month period corresponding to the prior tax year, divided by 12." *Id.* at § 23.121(b). "Total annual sales" means "the total of the sales price from every sale from a dealer's motor vehicle inventory for a 12–month period." *Id.* at § 23.121(a)(13). Further, "[a] dealer is presumed to be an owner of a dealer's motor vehicle inventory on January 1 if, in the 12–month period ending on December 31 of the immediately preceding year, the dealer sold a motor vehicle to a person other than a dealer." *Id* . at § 23.121(e)

In view of these provisions, we observe that the relevant consideration is not so much whether Martin owned the trucks; rather, because taxes are assessed on the basis of total annual sales of a dealer's motor vehicle inventory, we must determine whether Martin's activities of (1) transferring legal title from Pierce to the purchaser or (2) acting as Pierce's commissioned sales rep are properly characterized as sales of his motor vehicle inventory.[1]

 Though chapter 23 of the tax code repeatedly references the term "sale," it does not specifically define that single word. When interpreting a statute, words and phrases shall be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). When a statute does not define a term, we apply the term's ordinary meaning. *Hopkins v. Spring Indep. Sch. Dist.,* 736

S.W.2d 617, 619 (Tex.1987); We look at the generally accepted common and legal definitions of the words. *E.C., Jr., ex rel Gonzales v. Graydon,* 28 S.W.3d 825, 831 (Tex.App.—Corpus Christi 2000, no pet. h.).

We thus look to several definitions of "sale" as well as the context in which that term is used in chapter 23 to inform our decision. Section 152 of the tax code, which pertains to sales tax of motor vehicles, is analogous to our case. It defines "sale" as:

(1)(A) an installment and credit sale;

(B) an exchange of property for property or money;

(C) an exchange in which property is transferred but the seller retains title as security for payment of the purchase price; and

(D) any other closed transaction that constitutes a sale.

TEX. TAX CODE ANN. § 152.001(1) (Vernon 1992).

Black's Law Dictionary defines sale as:
A contract between two parties ... by which the [seller], in consideration of the payment or promise of payment of a certain price in money, transfers to the [buyer] the title and possession of the property. Transfer of property as providing of services for consideration. A transfer for a fixed price in money or its equivalent. Passing of title from the seller to the buyer for a price.

*Criswell v. European Crossroads Shopping Ctr.,* 792 S.W.2d 945, 949 (Tex.1990)

---

**1.** We do not necessarily disagree with the concurrence's conclusion that Martin should not have been taxed because none of the vehicles were "held for sale." However, our holding focuses and turns on the issue of whether Martin sold the vehicles as contemplated by the tax code, among other things: (1) because the computation of property tax is based on "total annual sales," TEX TAX CODE ANN. § 23.121(b); (2) because the presumption that Martin is the owner of motor vehicle inventory applies only if he "sold" a vehicle, *id.* at 23.121(e); and (3) to address HCAD's contentions that Martin was taxed on the basis of his selling 27 vehicles in tax year 1997.

(quoting BLACK'S LAW DICTIONARY 1200 (5th ed.1979)).

■■■ We do not see how any of the above definitions of a sale nor the use of the term "sale" of a "dealer's motor vehicle inventory" include Martin's passing bare legal title to the original purchaser or his activity as a commissioned sales representative for Pierce. Within the context of chapter 23, it is made abundantly clear in several places that only sales of a dealer's motor vehicle inventory are taxed. We must look to the true nature of the transactions. Though Martin is a dealer, and in a sense, "sells" the trucks as a commissioned sales rep, there is no evidence that he carried a motor vehicle inventory, much less that he sold a vehicle from inventory. The broadest definitions of "sale" in Black's Law Dictionary and the Tax Code do not include Martin's activities. Martin was not a seller; rather, per TXDOT-imposed rules, he was no more than a conduit between the real seller and purchaser to pass bare legal title. In the absence of consideration flowing from the purchaser to Martin in exchange for the trucks, which also appears to be a necessary component of a sale as defined above and in the context of applicable tax code provisions, Martin's transfers of title [2] are not sales.[3] Thus, we find Martin's transfers of bare legal title and his acting as a commissioned sales rep do not bring him within the purview of the tax code.

Martin's uncontroverted summary judgment proof conclusively establishes he did not sell a vehicle as contemplated by the tax code. We therefore hold the trial court erred in granting HCAD's summary judgment motion and that Martin established as a matter of law his entitlement to summary judgment on the issue of whether he was properly taxed. We sustain this issue.

### Attorney's Fees

Finally, in the trial court, Martin requested and was denied recovery of his attorney's fees. He seeks recovery of his fees pursuant to the section 42.29 of the tax code. Section 42.29 provides:"[a] taxpayer who prevails in an appeal to the court under Section 42.25 or Section 42.26 of this code may be awarded reasonable attorney's fees." TEX. TAX CODE ANN. § 42.29 (Vernon Supp.2000). Section 42.25 states: "If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised

---

2. Transfer is defined as "[a]n act of the parties, or of the law, by which the title to property is conveyed from one person to another. The sale and every other method ... of disposing of or parting with property...." BLACK'S LAW DICTIONARY 1342. We note that while a sale is a type of transfer, not all transfers are sales.

3. Under the rule of *ejusdem generis*, the "catchall" provision of section 152.001(1), "any other closed transaction that constitutes a sale," would not encompass Martin's transactions because those transactions are not of the same general kind or class as those specifically mentioned in the statute. The rule of *ejusdem generis* states that when in a statute general words follow a designation of particular classes of things, the particular designation restricts the meaning of the general words. *Hammond v.. City of Dallas*, 712 S.W.2d 496 (Tex.1986); *see also Hilton v. Southwestern Bell Tel. Co.*, 936 F.2d 823, 828 (5th Cir.1991) (when general words follow an enumeration of persons or things, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. *Ejusdem generis* is a rule of limitation, restricting general terms, such as "any other" and "and the like," which follow specific terms, to matters similar to those specified).

value determined by the court." Section 42.26 is not at issue here.

■■■■ We begin with the rule that attorney's fees may not be recovered unless provided for by statute or by contract. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.1992). Statutory provisions for the recovery of attorney's fees must be strictly construed because they are penal in nature and are in derogation of the common law. *New Amsterdam Cas. Co. v. Texas Ind. ., Inc.*, 414 S.W.2d 914, 915 (Tex.1967). An award of attorney's fees may not be supplied by implication but must be provided for by the express terms of the statute in question. *First City Bank—Farmers Branch, Texas v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984). HCAD argues that *Seven Inv. Co.* is materially on point with our case and thus does not provide for recovery of attorney's fees here. We agree.

There, a taxpayer successfully appealed the denial of "open-space land designations." However, the supreme court held proper the trial court's refusal to award the taxpayer attorney's fees after successfully protesting the denial of the designation. The court explained:

> [T]he language of section 42.25 does not support the award of attorney's fees when a taxpayer protests the denial of an open-space land designation.... [I]n an open-space land designation protest, the court does not make a value determination. The court only determines whether the property qualifies as open-space land, and the chief appraiser of

the appraisal district, not the court, determines the open-space appraised value of the land. Section 42.25 clearly contemplates a comparison of existing and court-determined values for the tax years at issue, which is not possible in [this case] because no value determination was ever made by the trial court.

*Seven Inv. Co.*, 835 S.W.2d at 78–79.

Our case presents a similar situation. Like *Seven Inv.*, the trial court did not make a value determination. This was not a dispute regarding the valuation of the trucks. Neither the trial court nor we determine the appraised value was excessive thus requiring a *reduction.* Rather, the determination is whether there was a sale giving rise to any taxation. Appellee, Martin, cites, and we find, no provision under Texas law to allow an award of attorney's fees.[4] We therefore overrule this issue.

The judgment of the trial court as to attorney's fees is affirmed. The summary judgment for HCAD is reversed and we render judgment for Martin that he did not sell the vehicles.

EDELMAN, Justice, concurring.

Property tax is imposed with regard to a dealer's "motor vehicle inventory," which consists of the vehicles "held for sale" by the dealer. *See* TEX. TAX CODE ANN. § 23.121(a)(4),(b) (Vernon Supp.2000). In this case, the statutory definitions leave no serious question that Martin is a "dealer"[1] or that the fire engines he sold were "vehicles."[2] Therefore, the pivotal issue is not

---

4. While the legislature may wish to provide for attorney's fees for a successful taxpayer like Martin, such is its prerogative, not ours.

1. *See* TEX.TAX CODE ANN. § 23.121(a)(3) (Vernon Supp. 2000) (defining "dealer"as, among other things, a person (such as Martin) who holds a dealer's general distinguishing number from the Texas Department of Transportation).

2. *See* TEX.TAX CODE ANN. § 23.121(a)(8) (Vernon Supp. 2000) (defining "motor vehicle" as a vehicle which has as its primary purpose the transport of property (such as fire fighting equipment) on a public street).

whether Martin's transactions were "sales," as the majority opines, because they could hardly be described as anything else, but, rather, whether the fire engines were ever "held for sale" by him so as to constitute "motor vehicle inventory" subject to property tax in his hands. The plain meaning of "held for sale" and simple logic would dictate that, in order for vehicles to be "held for sale" by Martin, they would, at a minimum, need to be both in existence and available for sale by him, *i.e.*, unsold, at the same time.

It is undisputed in this case that the fire engines Martin sells are not even manufactured until an order is placed by the ultimate buyer. Thus, by the time manufacture of such a unit is complete, the unit is not available for sale but is already sold. All that remains then to complete the transaction is to deliver it and collect payment, which is transmitted directly from the buyer to the manufacturer. Martin is never in actual or constructive possession of the fire engines while they are unsold. His temporary holding of title to the units has no legal substance but occurs only after the vehicle is already sold and only because it is required by state law; in effect, a legal fiction. Under these circumstances, the fire engines Martin sells are not vehicles "held for sale" by him and are, thus, not motor vehicle inventory which is subject to property tax in his hands.