**CRANE CARRIER COMPANY,**
Appellant,

v.

**BOSTROM SEATING, INC., Appellee.**

**No. 13–00–778–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Sept. 19, 2002.

Brock C. Akers, Evelyn Ailts Derrington, Phillips & Akers, Houston, for Appellant.

Clay E. Coalson, Robert J. Sigler, Meredith, Donnell & Abernethy, Corpus Christi, for Appellee.

Douglas R. Gwyther Jr., Corpus Christi, for Appellee.

Juan Enrique Mejia, Watts & Heard, Corpus Christi, for Appellee.

Lamar G. Clemons, English & Clemons, Corpus Christi, for Intervenors.

Thomas J. Henry, Roger L. Turk, Law Offices of Thomas J. Henry, Corpus Christi, for Intervenors.

William N. Woolsey, Woolsey & Schmidt, Corpus Christi, for Intervenors.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Dagoberto Gonzales brought suit against Patrick Athey and Crane Carrier Co. ("Crane") for injuries sustained in a rollover accident that occurred while he was driving a garbage truck manufactured and sold by Crane. Crane brought third party actions for statutory and common law indemnification against component part manufacturers Bostrom Seating, Inc. ("Bostrom"), the manufacturer of the driver's seat utilized in the garbage truck, and Beams Industries, Inc. ("Beams"), the manufacturer of the driver's side seat belt. The trial court granted directed verdicts on the issue of indemnity against Crane and in favor of Bostrom and Beams. The jury failed to reach a verdict on Gonzales's claims against Crane and Athey, and the trial court declared a mistrial. The trial court thereafter severed Crane's indemni-

ty claims against Bostrom, and this appeal ensued.

Crane raises two issues on appeal: (1) the trial court erred in rendering a directed verdict for Bostrom; and (2) the trial court erred in refusing to grant Crane's motion for new trial and severing Bostrom from the remaining litigation.

We reverse and remand.

## Standard of Review

A directed verdict is proper when (1) a defect in the opponent's pleading makes the pleading insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Encina P'ship v. Corenergy, L.L.C.,* 50 S.W.3d 66, 68 (Tex.App.-Corpus Christi 2001, pet. denied). We review a directed verdict in the light most favorable to Crane, as the party against whom the verdict was rendered, and we disregard all contrary evidence and inferences. *See Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994) (per curiam); *Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex. 1988); *Encina P'ship,* 50 S.W.3d at 68. We give Crane the benefit of all reasonable inferences created by the evidence. *Szczepanik,* 883 S.W.2d at 649. If there is any conflicting evidence of probative value on a theory of recovery, the directed verdict is improper and the case must be reversed and remanded for a jury determination of that issue. *Id.; see White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983).

## Common Law Indemnification

In its motion for directed verdict, Bostrom argued that Crane was not entitled to common law indemnity because

Crane was not an "innocent retailer" or "merely a conduit" for the driver's seat in question. Bostrom further argued that the Bostrom driver's seat was not defective and there is no evidence that the seat was defective when it left Bostrom's control. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 432 (Tex.1984). Under Texas common law, a retailer or other member of the marketing chain may receive indemnity from the manufacturer of the defective product only when the retailer or other member of the marketing chain is merely a "conduit" for the defective product and is not independently culpable. *See Casa Ford, Inc. v. Ford Motor Co.,* 951 S.W.2d 865, 872 (Tex.App.-Texarkana 1997, pet. denied) (citing *Duncan,* 665 S.W.2d at 432).

Bostrom argues that Crane's selection of the Bostrom 910 model air-ride seat and installation of the seat in the garbage truck precludes Crane from qualifying as a mere "conduit" and renders it independently culpable in the design and manufacture of the garbage truck. According to Bostrom, the expert testimony adduced at trial shows that Crane defectively designed the interior and restraint system of the garbage truck by elevating the driver's seat, thereby creating less headroom for the driver, placing a thin head liner on the roof of the cab, placing an unpadded steel engine cover with squared edges between the driver and the right-side passenger, selecting a two-point seat belt rather than a three-point shoulder harness, and selecting a driver's seat lacking features available on other Bostrom products. Bostrom further draws our attention to expert testimony indicating that the Bostrom seat was not itself defective.

However, in the instant case, there was conflicting testimony regarding the alleged defectiveness of the design of the garbage truck and the design of its compo-

nent parts. While we agree with Bostrom that there was testimony admitted at trial that the garbage truck was defectively designed, and that the design was a cause of the plaintiff's injuries, there was also evidence adduced at trial suggesting that the defective design of the Bostrom seat caused the plaintiff's injuries. Specifically, Gonzales's expert witness, John Stilson, testified that the design of Bostrom's seat was defective because of its failure to keep height retention in a crash sequence, its failure to incorporate an arm rest, its failure to have a headrest, and its failure to have a contoured seat. As part of the restraint system, Stilson concluded that the Bostrom seat made the design of the garbage truck unreasonably dangerous.

Bostrom's arguments must fail given the standard of review applicable to a directed verdict. The foregoing expert testimony constitutes conflicting evidence of probative value on a material issue. *See White,* 651 S.W.2d at 262. Thus, we conclude that the trial court improperly directed the verdict in favor of Bostrom on the issue of common law indemnity.

### Statutory Indemnification

In its motion for directed verdict, Bostrom argued that Crane was not entitled to statutory indemnity because Crane is a manufacturer, not a seller, and is therefore not entitled to indemnification under the statutory indemnification scheme provided in the civil practice and remedies code. Bostrom specifically argues that a manufacturer like Crane cannot seek indemnity from a component parts supplier. Bostrom contends that this proposition is supported by the statutory definitions of "seller" and "manufacturer," the rule of statutory construction known as "ejusdem generis," and the legislative history of the indemnification statute.

When a products liability action is submitted to the jury on a strict liability theory, the defendant is held liable based on proof that it placed the product into the stream of commerce and upon further proof that the defective product was a producing cause of the claimant's damages. *See Firestone Steel Prods. Co. v. Barajas,* 927 S.W.2d 608, 613 (Tex.1996). Strict liability claims are based on the product and, therefore, strict liability claims may be asserted against "innocent sellers"[1] who have no culpable responsibility except for their role as an intermediary seller that merely received a defective product and unknowingly sold it down the stream of commerce. *See generally id.* To balance the right of consumers to sue any party who placed a product into the stream of commerce against the potential unfairness of subjecting significant financial liability upon an "innocent seller," the Texas Legislature created a statutory right to indemnification. *See Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 868–69 (Tex.1999). The statute protects innocent sellers and places primary liability on manufacturers, who are usually in a better position to recognize and remedy defects. *Graco, Inc. v. CRC, Inc. of Tex.,* 47 S.W.3d 742, 745 (Tex.App.-Dallas 2001, pet. denied); *see Fitzgerald,* 996 S.W.2d at 868–69.

The seller's claim for indemnity under chapter 82 of the civil practice and remedies code is a statutory cause of action.

---

1. Plaintiffs in strict liability cases are given the right to sue any party in the stream of commerce—even "innocent sellers"—based on the public policy that consumers may not know the identity of a product's manufacturer or may not have legal recourse against such manufacturers but the seller of the product is generally more easily identified and subjected to the jurisdiction of local courts. *Oasis Oil Corp. v. Koch Refining Co.,* 60 S.W.3d 248, 253 n. 1 (Tex.App.-Corpus Christi 2001, pet. denied).

Like other statutory causes of action, the elements of the cause of action must track the statute. *See Borneman v. Steak & Ale, Inc.,* 22 S.W.3d 411, 412 (Tex.2000)(citing *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994)). The statute defines the claim for indemnity as follows:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.... The duty to indemnify under this section ... applies without regard to the manner in which the action is concluded ... and is in addition to any duty to indemnify established by law, contract, or otherwise.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a), (e) (Vernon 1997). The terms "manufacturer," "seller," and "products liability action" are all expressly defined by statute:

> "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any part thereof in the stream of commerce.
>
> "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.... [A] wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.
>
> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001(2), (3), (4), 82.002(b), (g) (Vernon 1997).

Under the express terms of the act, Crane qualifies as a seller because it placed the product, the vehicle, in the stream of commerce, and Bostrom qualifies as a manufacturer because it manufactured a component part thereof. There is nothing in the act that provides that an entity must qualify as either a seller or a manufacturer, but not both. Such a proposition is fundamentally untenable. Manufacturers sell their products. Sellers may or may not be manufacturers, as for example, a car dealership would qualify as a seller but not a manufacturer.

Bostrom argues that the statutory interpretation rule of ejusdem generis precludes manufacturers from falling within the statutory definition of "seller." The rule of ejusdem generis states that, when general words follow a designation of particular classes or things, the particular designations restrict the meaning of the general terms. *Martin v. Harris Cty. Appraisal Dist.,* 44 S.W.3d 190, 195 (Tex. App.-Houston [14th Dist.] 2001, pet. denied); *see Dawkins v. Meyer,* 825 S.W.2d 444, 447 (Tex.1992). According to Bostrom,

> In the present case the doctrine of ejusdem generis requires that § 82.001(3)'s 'otherwise placing, for any commercial purpose, in the stream of commerce' language be construed in light of the

more specific 'business of distributing' language that immediately precedes it.

Bostrom's argument must fail. The statutory language, "in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof," is self-referential, and does affect the statutory definition of a manufacturer. Moreover, we do not apply statutory rules of interpretation to clear and unambiguous language. *See State v. Hodges,* 92 S.W.3d 489, 494 (2002).

Finally, Bostrom argues that the statute's legislative history does not support Crane's contention that it is a "seller." According to Bostrom, because "the legislative history contains no indication that the legislature was intending to expend the class of persons (i.e., sellers) to whom statutory indemnity could be awarded, this Court should conclude that the legislature did not intend to extend the right to indemnification beyond the 'innocent product retailers' who were indemnified under common law."

In contrast to Bostrom's argument, the Texas Supreme Court has noted that "the state of the common law sheds little light on what the Legislature intended" when it defined "seller" and required manufacturers to indemnify sellers. *Fitzgerald,* 996 S.W.2d at 868. In fact, the statute itself "unambiguously requires indemnification of certain sellers" and "[a]nyone who qualifies as a 'seller' may seek indemnification, subject to the limitations of section 82.002(a)." *Id.* at 867.

The consequence of Bostrom's interpretation would be that a manufacturer, even if completely innocent in the design and manufacture of a component part of its product, could not obtain statutory indem-

nification from a component parts supplier who supplied a defective component part.

We conclude that the trial court erred in granting a directed verdict on Crane's action for statutory indemnification. Accordingly, we sustain Crane's first issue on appeal.

### *Motion for New Trial and Severance*

In its second issue, appellant argues that the trial court erred in refusing to grant its motion for new trial and severing Bostrom from the remaining litigation. We have already determined that the trial court erred in granting the directed verdict in favor of Bostrom and against Crane. Thus, the trial court erred in refusing to grant the motion for new trial. We next determine the propriety of the trial court's action in severing the directed verdict. According to Crane, the issues in the underlying product action and the indemnity actions are interwoven, and it would be unfair to the parties to require a separate trial on indemnification alone.

The trial court has broad authority to determine whether or not to sever a matter, and its decision to grant or deny a severance will not be reversed on appeal absent an abuse of discretion. *Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996). A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990). Contrary to Crane's argument, the severed claim is not so interwoven with the remaining action that it involves the same facts and issues. *Cf.*

*Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 446 (Tex.1989) (right for indemnity not interwoven with or dependent on underlying action).

■■■ Indemnification actions may be brought as part of the underlying product case, or they may be brought as a separate action. *Cf. Meritor Automotive, Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 87 (Tex. 2001) (same action) and *Fitzgerald,* 996 S.W.2d at 864 (separate action). In fact, the statutory scheme underlying a product liability claim for indemnification implicitly recognizes that indemnification actions may be brought separate and apart from the underlying product liability claim. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (duty to indemnify applies without regard to manner in which action is concluded; damages found by a jury are deemed reasonable).

Crane further contends that Texas Rule of Civil Procedure 41 does not permit a trial court to sever a case after it has been submitted to the trier of fact. TEX.R. CIV. P. 41; *see State Dep't of Highways & Pub. Transp. v. Cotner,* 845 S.W.2d 818, 819 (Tex.1993) (per curiam). In the instant matter, the case was called to trial on October 23, 2000. Crane rested on November 6, 2000, and the trial court granted Bostrom's motion for directed verdict that same day. The charge was given to the jury on November 7, 2000, and the jurors began deliberations on November 8, 2000. Bostrom filed its motion for severance on November 20, 2000, and the trial court granted the severance on November 27, 2000.

The severance in the instant case was granted after submission of the case to the jury, and was therefore improper. *See* TEX.R. CIV. P. 41; *Cotner,* 845 S.W.2d at 819. Nevertheless, the trial court retains discretion to grant a partial new trial under rule 320 of the Texas Rules of Civil Procedure. *See Cotner,* 845 S.W.2d at 819. Rule 320 provides for new trials on "part of the matters in controversy," if such part is "clearly separable without unfairness to the parties." *Id.; see* TEX.R. CIV. P. 320. Similarly, rule 44.1(b) of the appellate rules provides that if an error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. TEX.R.APP. P. 44.1(b).

Appellant has failed to show that a partial new trial would result in unfairness to the parties. The trial court did not abuse its discretion in ordering the severance. We overrule Crane's second issue on appeal.

*Conclusion*

The judgment of the trial court is reversed, and the cause remanded for trial.