**Charles McIntyre HADEN, Jr., Individually, and Charles McIntyre Haden, Jr. & Company d/b/a Haden & Company, Appellants,**

**v.**

**DAVID J. SACKS, P.C. d/b/a Sacks & Associates, Appellee.**

No. 01–03–00025–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 7, 2009.

Rehearing En Banc Overruled Sept. 11, 2009.

Brian D. Womac, Womac & Associates, Richard N. Countiss, Countiss Law Firm, Houston, TX, for Appellants.

David J. Sacks, Sacks Law Firm, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and NUCHIA.*

## OPINION ON REMAND

SHERRY RADACK, Chief Justice.

Appellants, Charles M. Haden, Jr., individually (Haden), and Charles McIntyre

Haden & Company d/b/a Haden & Company (the company), challenge an award of $90,000 for attorney's fees and costs to appellee, David J. Sacks, P.C. d/b/a Sacks & Associates (the law firm), incident to turnover relief obtained by the law firm pursuant to section 31.002(e) of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e) (Vernon 2008) (the turnover statute). The law firm sought relief under the turnover statute to enforce the final judgment previously rendered on the law firm's motions for summary judgment for breach of contract and for attorney's fees. We initially reversed that judgment, in Cause No. 01–01–00200–CV, but the Supreme Court of Texas affirmed the portion of the judgment that awarded the law firm $30,314.38 plus interest pursuant to its fee agreement with Haden and the company. *David J. Sacks P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex.2008) (per curiam). On remand, we addressed Haden's and the company's remaining issues and have affirmed the judgment in Cause No. 01–01–00200–CV in an opinion issued concurrently with this opinion.[1] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 2008); *see generally* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002–.008 (Vernon 2008) (governing judgments and their enforcement).

Haden and the company present two major issues on appeal. Their first issue, however, is conditioned on our having reversed the underlying judgment in Cause No. 01–01–00200–CV. Having affirmed the judgment in that cause, we overrule the first issue. Their second issue presents three sub-issues that challenge the

* Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on December 16, 2008.

1. Cause No. 01–01–00200–CV, *Charles McIntyre Haden, Jr., individually and Charles McIn-*

*tyre Haden, Jr. & Company d/b/a Haden & Company v. David J. Sacks, P.C., d/b/a Sacks & Associates*, 332 S.W.3d 503 (Tex.App.-Houston [1st Dist.] 2009, no pet. h.).

award of $90,000 in attorney's fees to the law firm for collection procedures initiated pursuant to the turnover statute, TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e) (Vernon 2008). In the first sub-issue, Haden and the company contend that the attorney's fee award must be reversed because the law firm cannot recover as a matter of law under the turnover statute for work done in federal bankruptcy court.[2]

## This Court's Jurisdiction

The trial court signed the judgment challenged in this appeal on February 19, 2002, and Haden and the company filed their notice of appeal on March 14, 2002. Though the law firm sought recovery of attorney's fees and costs incurred in pursuing turnover relief against both Haden and the company, the trial court's judgment granted relief only against Haden and did not dispose of the law firm's request for costs and attorney's fees against the company. We notified the parties sua sponte that the judgment did not appear to be final and that we would therefore be required to dismiss the appeal unless the appellate record were supplemented to establish that the judgment was final as to all issues and parties. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (defining judgment that is final for purposes of appeal as one that disposes of all pending parties and claims in record, except as necessary to carry out decree); *see also Fisher v. P.M. Clinton Int'l Investigations*, 81 S.W.3d 484, 486 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that postjudgment discovery order did not resolve all issues and parties and was therefore not appealable).

In response to our order, Haden and the company filed a supplemental clerk's record. As supplemented, the record on appeal includes an "Order for Judgment Nunc pro Tunc," which the trial court signed on May 6, 2006. This order refers to "Defendants' Unopposed Motion for Judgment Nunc Pro Tunc," and includes the following:

> Defendants' Motion for Judgment Nunc Pro Tunc is hereby GRANTED; and, the Court will enter a Judgment Nunc Pro Tunc which will add CHARLES MCINTYRE HADEN & COMPANY d/b/a HADEN & COMPANY, to the Judgment entered by this Court on February 19, 2002, so as to correct the clerical error omitting the Defendant from the Judgment.

The supplemental clerk's record also contains a "Final Judgment Nunc Pro Tunc," which the trial court signed on May 1, 2006.

In contrast to the original judgment signed on February 19, 2002, the trial court's May 1, 2006 judgment awards the law firm relief and costs not only against Haden, individually, but also against the company. We have concluded, from the supplemental clerk's record, that the judgment is now final as to all issues and parties and that we therefore have jurisdiction to address the merits of the appeal. *See Schultz v. Fifth Jud. Dist. Court of Appeals*, 810 S.W.2d 738, 740 (Tex.1991) (orig. proceeding) (upholding appealability of section 31.002 orders).

## Factual and Procedural Background

In Cause No. 01–01–00200–CV, we affirmed the trial court's summary judgments in favor of the law firm on its claims

---

2. Haden and the company had initially presented two additional sub-issues, contending that the evidence was factually insufficient to support the attorney's fees award and that the fees awarded were not reasonable, necessary, or customary, but affirmatively abandoned these sub-issues at oral submission on December 16, 2008.

for breach of contract and attorney's fees. *Charles McIntyre Haden, Jr., individually and Charles McIntyre Haden, Jr. & Company d/b/a Haden & Company v. David J. Sacks, P.C., d/b/a Sacks & Associates,* 332 S.W.3d 503 (Tex.App.-Houston [1st Dist.] 2009, no pet. h.). When Haden and the company did not supersede that judgment pending the appeal of Cause No. 01–01–00200–CV, the law firm began extensive proceedings to discover nonexempt assets and sought to execute on the judgment by requesting the following relief from the trial court, as authorized by section 31.002: a turnover order, appointment of a receiver, and injunctive relief to prevent postjudgment transfer of assets. After obtaining service on Haden and the company by court-authorized substituted service, the law firm prevailed on each of these requests, and the trial court required turnover of property to the receiver.[3] The receiver succeeded in seizing $6,715 from a bank account, which the court ordered disbursed to satisfy part of the judgment and expenses incurred by the receiver.

Before the receiver was able to secure any other property to satisfy the judgment, however, Haden filed a petition, as an individual, in the United States District Court for the Southern District of Texas at Houston, seeking protection from creditors under chapter 13 of the United States Bankruptcy Code. This filing arrested all action by the court-appointed receiver on behalf of the law firm against Haden. *See* 11 U.S.C. § 362 (2000) (providing for automatic stay against bankruptcy debtor). Haden later converted his individual petition to a request for chapter 11 protection.

After appearing through independent bankruptcy counsel in Haden's individual bankruptcy case, the law firm asserted its rights as creditor and challenged Haden's declaration of bankruptcy. On December 11, 2001, the bankruptcy court dismissed Haden's bankruptcy filing with prejudice.

Two days after Haden's individual bankruptcy was dismissed, Sacks filed an emergency motion for immediate turnover of non-exempt property. Based on information gleaned from Haden's bankruptcy filings, Sacks claimed that Haden was in contempt of the trial court's temporary restraining order because Haden had made certain disbursements that violated the trial court's turnover order.

With the end of the bankruptcy proceedings, the court-appointed receiver was able to achieve control of non-exempt assets on the law firm's behalf. Having thus prevailed on its turnover efforts in the trial court, the law firm sought to recover its reasonable costs and attorney's fees, pursuant to section 31.002(e) of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e).

The law firm requested fees and costs that totaled $90,000, representing 372.25 hours' work. The trial court conducted three reported hearings on the turnover issue. The first hearing, held shortly after the law firm prevailed on its motion for summary judgment on its fee agreement with Haden and the company, addressed Haden's requests for a protective order regarding his personal and business assets and resulted in some limitations regarding extent and scope. One month later, on February 7, 2001, the trial court appointed the receiver. A year later, after all bankruptcy proceedings had terminated through the law firm's efforts, the trial court conducted two additional hearings.

---

**3.** The law firm also filed an application for writ of garnishment, which was dismissed without prejudice by the trial court, in response to the law firm's motion to nonsuit the application.

At the first hearing, Haden and the company took the position that attorney's fees were not recoverable beyond those connected with appointment of the receiver. On behalf of the law firm, associate Kathleen Boll testified that she had logged 388 hours on turnover work and that all fees and costs requested by the law firm were "usual and customary" and "reasonable and necessary."

That hearing continued four days later, when the trial court admitted into evidence records kept by the law firm to support the attorney's fees and costs requested and heard additional testimony by Boll regarding postjudgment-turnover work and her work with Peter Johnson, who appeared on behalf of the law firm in bankruptcy court, and by Michael Beckwith, whom the law firm had retained to pursue recovery of its attorney's fees. Boll explained that it was both reasonable and necessary for the law firm to appear as a creditor in bankruptcy court because (1) the law firm had information revealing that Haden had violated the trial court's turnover order and had significantly more income than originally disclosed and (2) by obtaining dismissal of Haden's bankruptcy, the receiver appointed by the trial court recovered the entire non-exempt estate. In his testimony, Johnson defended the reasonableness and necessity of Boll's postjudgment work and her fees related to the turnover and the bankruptcy. He also explained that he had been retained to dispute the legitimacy of Haden's bankruptcy filing at the outset, to represent the law firm's interest if it were legitimate and to get it dismissed if it were not, which he did.

Brian Womac, the company's newly retained counsel for the turnover proceeding, and Kara Farrell, an attorney who did collection work for Womac,[4] offered expert testimony that disputed the law firm's right to attorney's fees, both as a matter of law and as to the amount sought. Continuing Haden's and the company's contentions that no fees were recoverable except those related to obtaining appointment of the receiver, Womac deemed more than ten hours' work unreasonable and any amount over $1,500 as excessive. Under cross-examination, Womac took the position that "once a [r]eceiver is appointed, anything that [a] creditor [does] is unreasonable" and "unnecessary." Beyond those contentions, Haden and the law firm did not otherwise challenge the evidence presented by the law firm's billing records.

The trial court ruled that section 31.002 entitled the law firm to attorney's fees incurred in collecting the judgment, and that the law firm was entitled to the $90,000 it had requested as reasonable costs and attorney's fees.

## Attorney's Fees Incurred in Seeking Turnover Relief

In their first challenge to the fee award, Haden and the company reurge their contention that section 31.002(e) does not authorize recovery of attorney's fees incurred in federal bankruptcy court for seeking to dismiss Haden's individual bankruptcy filing and, therefore, that the judgment of the trial court must be vacated to the extent of the $44,900 in attorney's fees incurred by collection counsel for the law firm and the $8,461 in attorney's fees incurred by independent bankruptcy counsel hired by the law firm.[5]

---

4. The record reflects that Haden and the company had hired new counsel at this point in the proceedings.

5. During oral submission of this case, counsel for Haden and the company took the position that the turnover statute extends only to Texas courts, but offered no new authority to sup-

## A. The Turnover Statute

The turnover statute states, in part, as follows:

Section 31.002. Collection of Judgment Through Court Proceeding

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

(c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.

(d) The judgment creditor may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding.

(e) The judgment creditor is entitled to recover reasonable costs, including attorney's fees.

. . .

TEX. CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 2008).

■ The turnover statute aids collection of final money judgments by empowering trial courts to issue various orders aimed at requiring a judgment debtor to turn over to a judgment creditor nonexempt property that the debtor owns and controls. See Schultz, 810 S.W.2d at 739 n. 3; Bay City Plastics, Inc. v. McEntire, 106 S.W.3d 321, 325 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). In addition, section 31.002(e) empowers trial courts to award "reasonable costs, including attorney's fees" incurred in seeking post-judgment execution relief under section 32.001. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e). As a judgment creditor who obtained turnover relief in this case, the law firm was "entitled" to recover its reasonable costs, including attorney's fees. See id.; compare Great Global Assurance Co. v. Keltex Props., Inc., 904 S.W.2d 771, 776 (Tex.App.-Corpus Christi 1995, no writ) (holding recovery of reasonable costs and attorney's fees mandatory for judgment creditor who obtains turnover relief under section 31.002) and Ross v. 3D Tower Ltd., 824 S.W.2d 270, 273 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (noting that turnover statute expressly provides for reasonable costs and attorney's fees to party obtaining turnover relief); with Bay City Plastics, Inc., 106 S.W.3d at 326 (holding that erroneously

port its position, which is untenable. See Marré v. United States, 117 F.3d 297, 309 (5th Cir.1997) (applying Texas law to hold that federal district court erred by refusing to

award attorney's fees to party who prevailed in obtaining turnover relief pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 32.002).

*issued* turnover order *precluded* award of attorney's fees under section 31.002(e)).

## B. Attorney's Fees Incurred in Bankruptcy–Court Proceedings Recoverable under Section 31.002(e)

We review section 31.002 orders for abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 548 (Tex.App.-Houston [1st Dist.] 1994, no writ). A trial court has no discretion, however, when determining what the law is, which law governs, or how to apply the law. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex.2002); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992); *Furst v. Smith*, 176 S.W.3d 864, 869 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *see also Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002) ("[M]atters of statutory construction are [generally] questions of law."); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999) ("Whether a particular remedy is available under a statute is a question of law for the court."). Accordingly, we review de novo Haden's and the company's matter-of-law challenge to the trial court's implicit determination that section 31.002(e) permits awarding the law firm reasonable costs and attorney's fees for work accomplished in bankruptcy court.

### 1. *Section 31.002—A Remedial Statute to be "Fairly" and "Liberally" Construed*

Haden and the company contend that the law firm may not collect its attorney's fees for work done in relation to Haden's petition for bankruptcy because the statute does not refer specifically to bankruptcy proceedings. They argue that *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914 (Tex.1967), supports their contention that the law firm may not recover attorney's fees and costs, pursuant to section 31.002(e), for work done in bankruptcy court.

*New Amsterdam Casualty* does not interpret section 31.002(e) or any predecessor to that statute and arose instead under the "general attorney's fees statute," former article 2226, *see id.*, 414 S.W.2d at 915–16. This statute is currently codified as chapter 38 of the Civil Practice and Remedies Code, the provisions of which we construed in Cause No. 01–01–00200–CV, Haden's and the company's companion case to this case. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 58–59 (Tex.2008) (tracing history of former article 2226).

*New Amsterdam Casualty* held that a surety could not recover attorney's fees under the predecessor to article 38.001 because the surety was not within the specified types of persons authorized to recover, but was seeking to recover through one of those persons. *See* 414 S.W.2d at 915–16. In contending that *New Amsterdam Casualty* supports their contention that section 31.002(e) prohibits recovery of attorney's fees for work done in bankruptcy court, Haden and the company rely on the supreme court's statement that statutes authorizing attorney's fees must be strictly construed because they are "in derogation of the common law" and "penal in nature." *See id.* at 915 (citing *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 896 (Tex.1962)).

By statutory proscription, however, the common-law rule requiring strict construction of statutes in derogation of the common law does not apply to Texas statutes, which are to be liberally construed to achieve their purpose and to promote justice. TEX. GOV'T CODE ANN. § 312.006(a)-(b) (Vernon 2005). *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 869 (Tex.1999) (Owen, J., dis-

senting) (citing Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ Aɴɴ. § 312.006(b)).[6]

## 2. *Section 32.002—A Remedial Statute*

The Legislature adopted section 32.002 to enable procedures to facilitate and aid collection of a judgment beyond the limits imposed by the predecessor statute. *See Cross, Kieschnick & Co. v. Johnston,* 892 S.W.2d 435, 438 (Tex.App.-San Antonio 1994, no writ) (citing David Hittner, *Texas Post-judgment Turnover & Receivership Statutes,* 45 Tex. Bar J. 417, 417–18 (Apr. 1982) (citing House and Senate committee reports)); *see Ex parte Swate,* 922 S.W.2d 122, 125 (Tex.1996) (Gonzalez, J., concurring); *Lesikar v. Rappeport,* 104 S.W.3d 310, 313 (Tex.App.-Texarkana 2003, pet. denied); *United Bank Metro v. Plains Overseas Group, Inc.,* 670 S.W.2d 281, 284 (Tex.App.-Houston [1st Dist.] 1983, no writ); *see also Buller,* 806 S.W.2d at 227 (noting impropriety of determining substantive rights in turnover proceedings).

██ Because the statute is procedural and thus remedial in nature, we must adopt a construction that, in the absence of an express legislative prohibition to the contrary, will enable collection by the judgment creditor, here the law firm, against the judgment debtor, here Haden and the company. *See R.R. Street & Co. Inc. v. Pilgrim Enters., Inc.,* 166 S.W.3d 232, 238 (Tex.2005) (stating, in construing Texas' Solid Waste Disposal Act, "If a statute is curative or remedial in its nature the rule is generally applied that it be given the most comprehensive and liberal construction possible.") (quoting *Burch v. City of San Antonio,* 518 S.W.2d 540, 544 (Tex.1975) (construing statutes conferring eminent domain powers on certain incorporated cities and towns)); *Stephenson v. Stephenson,* 22 S.W. 150, 151 (Tex.1893); *Daniel v. Daniel,* 779 S.W.2d 110, 114 (Tex.App.-Houston [1st Dist.] 1989, no writ).

## 3. *"Plain Language" Controls Whenever Possible*

██ When we construe a statute, our objective is to determine and give effect to the legislature's intent. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651–52 (Tex.2006); *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003). If the language of the statute is clear and unambiguous, we seek the legislature's intent from the plain meaning of the words of the statute. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993); *see also Alex Sheshunoff Mgmt. Servs.,* 209

**6.** The proscription against strict construction and the requirement of liberal construction have been Texas law since the Revised Civil Statutes of 1895. *See Farmers' & Mechs. Nat'l Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120, 1123 (1911).

> "Section 3, General Provisions, of our Revised Statutes 1895, p. 1103, provides 'that the rule of the common law that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes, but said statutes shall constitute the law of this state respecting the subjects to which they relate, and the provisions thereof shall be *liberally construed* with a view to effect their objects and to promote justice.'"

*Hanks,* 137 S.W. at 1123 (quoting "Section 3, General Provisions, of our Revised Statutes 1895, p. 1103"). As the *Hanks* court stated, in assessing the rights found in statutes that deviate from the common law, the dispositive factor is that "the right must be found in the statute itself *fairly construed.*" *Id.* (emphasis added); *accord, Fitzgerald,* 996 S.W.2d at 869 (Owen, J., dissenting) (citing *Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex.1993); *Satterfield v. Satterfield,* 448 S.W.2d 456, 459–60 (Tex.1969)) (all stating that statutes in derogation of common law are not to be extended beyond their plain meaning or applied to cases not clearly within their purview).

S.W.3d at 651 ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on."); *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.,* 251 S.W.3d 481, 483 (Tex.2008) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.") (quoting *Fitzgerald,* 996 S.W.2d at 866).

### 4. *Plain Language Compels Recovery in this Case*

 The turnover statute permits judgment creditors to reach property that is in the possession of the debtor or subject to the debtor's control. *See* TEX. CIV. PRAC. & REM CODE ANN. § 31.002(b)(1); *Buller,* 806 S.W.2d at 227 (noting that purpose of turnover statute is to determine whether "asset is in the possession of the judgment debtor or subject to the debtor's control"); *Bay City Plastics, Inc.,* 106 S.W.3d 321, 325 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (quoting *Parks v. Parker,* 957 S.W.2d 666, 668 (Tex.App.-Austin 1997, no pet.) ("[J]udgment debtor can also be ordered to turn over property, no matter who possesses it, if the property is subject to his control.")). The broad reach of the turnover statute is thus well-settled.

Consistent with this broad reach under the statute, its plain language empowers a judgment creditor to enforce that reach. Specifically, section 32.001 provides that a judgment creditor, in this case, the law firm, is "entitled" to "aid from a court of appropriate jurisdiction ... to obtain satisfaction on the judgment." TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 2008).

The "court of appropriate jurisdiction" here was initially the trial court. *See id.* § (d). When Haden filed his petition for bankruptcy, however, the automatic-stay provisions of 11 U.S.C. § 362 arrested all action by the receiver to execute on the underlying judgment. The only court in which the law firm could pursue relief in order to obtain satisfaction of the judgment thus became the bankruptcy court. Because Haden decided to seek relief from the United States Bankruptcy Court for the Southern District of Texas, which automatically triggered the stay of any other court proceedings that arose from that decision pursuant to 11 U.S.C. § 362, the bankruptcy court became the only possible "court of appropriate jurisdiction" in which the law firm could pursue its execution efforts. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a).

We note further that the turnover statute does not require that the judgment creditor appear before a court in a single proceeding, but provides that the judgment creditor "may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding." TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 2008). Although the bankruptcy proceeding was independent from the trial court's proceeding, the turnover statute expressly allows separate proceedings for satisfaction of judgments. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(d).

Having examined section 31.002 in its entirety, we conclude that its language is clear. Whether construed strictly or liberally, section 31.002(e) plainly provides that the law firm is "entitled" to costs and attorney's fees for its efforts to collect the judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e); *see Alex Sheshunoff Mgmt.,* 209 S.W.3d at 651–52 ("[The] enacted language [of a statute] is what constitutes the law, and when a statute's words are unambiguous and yield a single[,] inescapable interpretation, the judge's inquiry is at an end.").

The record establishes that, as a result of the law firm's investigation of Haden's sworn filings in support of his bankruptcy petition, the law firm was able to determine that Haden had violated the trial court's section 31.002 orders, for example, by paying $54,000 to American Express and by obtaining certified checks in the total amount of $40,000, $10,000 of which was made payable to Haden himself. In addition, the law firm learned that Haden had reported income of $376,000 between March 14, 2001, when he filed his bankruptcy petition, and July 13, 2001.

Peter Johnson, who represented the law firm in the bankruptcy proceedings testified that his role was to seek dismissal of the bankruptcy case if he determined that the declaration of bankruptcy was unsubstantiated, or to represent Sacks's interests in the bankruptcy proceeding if he determined that the declaration of bankruptcy was legitimate. According to Michael Beckwith, the law firm's collection attorney, as a result of the law firm's activity in the bankruptcy court, "all the non-exempt assets of Mr. Haden Jr. [were] back under the control of the receiver once the bankruptcy was dismissed."

By seeking the assistance of the bankruptcy court through bankruptcy counsel Johnson, the law firm facilitated the release of nonexempt property to the court-appointed receiver, whose "authority to take possession of" that property had been previously stayed by Haden's bankruptcy petition. See TEX. CIV. PRAC. & REM.CODE ANN § 31.002(b)(3). The law firm's actions in bankruptcy court thus enabled payment to the judgment-creditor law firm, "to satisfy the judgment" previously rendered by the trial court. See id. § 31.002(b)(2). As confirmed by Johnson's and Beckwith's testimony, once the bankruptcy was dismissed, the receiver was able to take control of all nonexempt assets and to per-

form his appointed role under section 31.002(b)(3). See id.

In support of their challenge to the trial court's authority to award the law firm its costs and fees incurred in seeking to set aside Haden's bankruptcy petition, Haden and the company also rely on Martin v. Harris Cty. Appraisal Dist., 44 S.W.3d 190 (Tex.App.-Houston [14th Dist.] 2001, pet. denied), and Intertex, Inc. v. Walton, 698 S.W.2d 707 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). We conclude that neither case applies.

Intertex arose under the predecessor turnover statute, former article 3827a(e) of the Revised Civil Statutes. Act effective June 13, 1979, 66th Leg., R.S., ch. 671, 1979 Tex. Gen. Laws 1555, repealed by Act effective Sept. 1, 1985, 69th Leg., R.S., ch. 959, § 9(1), 1985 Tex. Gen. Laws 3242, 3322. In the same manner as the current statute, section 31.002, former article 3827a(e) provided "a means whereby a judgment creditor may receive the aid of the court in satisfying his judgment from a judgment debtor who owns property [that] cannot be attached readily or levied on by ordinary process." See Intertex, Inc., 698 S.W.2d at 710. Intertex had purchased property at a foreclosure sale that was later set aside as invalid because of lack of proper notice to obligors who had defaulted on their promissory note indebtedness to their creditor. Id. at 708–09. Relying on its status as a purchaser at the subsequently invalidated foreclosure sale, Intertex argued that it was subrogated to the rights of the creditor and, based on that status, was entitled to recover, pursuant to former article 3827a(e), attorney's fees and costs expended in removing the encumbrances on the property. See Intertex, Inc., 698 S.W.2d at 710–11.

Our sister court rejected this argument and upheld the trial court's denial of fees and costs to Intertex, on the grounds that

the statute did not expressly provide for subrogation of the rights of the judgment creditor. *Id.* at 711. *Intertex* thus stands for the proposition that the rights to recover attorney's fees and costs, as conveyed by former article 3827a(e) and its successor, current section 31.002(e), apply solely to a judgment creditor who seeks the aid of the court in collecting a judgment and not to a party who seeks subrogation to the rights of the judgment creditor. *See id.* at 711.

It is undisputed that the law firm in this case is a judgment creditor. Moreover, Haden and the company do not dispute that the law firm sought and obtained turnover relief from the trial court to enforce the judgment previously rendered on the law firm's claims for breach of contract and attorney's fees. The law firm is thus a proper party to obtain relief under section 31.002(e). *See, e.g., Great Global Assurance Co.,* 904 S.W.2d at 776 (holding that section 31.002(e) mandates recovery of attorney's fees and costs to judgment creditor who succeeds in obtaining turnover relief). *Intertex* does not support Haden's and the company's arguments.

We also reject Haden's and the company's reliance on *Martin v. Harris County Appraisal District,* which interpreted a provision of the Tax Code that authorized recovery of reasonable attorney's fees to a "taxpayer who prevails in an appeal to the court under Section 42.25 or Section 42.26 of [the Tax Code]." 44 S.W.3d at 195 (quoting TEX. TAX CODE ANN. § 42.29 (Vernon Supp. 2000)). In concluding that the taxpayer was not entitled to attorney's fees under the statute, the court construed the applicable section of the Tax Code, section 42.25, and concluded that the statute applied only if the court made a "value determination" that culminated in a reduction in appraised value. *See Martin,* 44 S.W.3d at 195–96. Because the trial court had not

made that determination, and, therefore, section 42.25 of the Tax Code did not apply, the taxpayer could not invoke the provisions of section 42.29 that authorize attorney's fees. *See Martin,* 44 S.W.3d at 196. There is no contention here that a related statute renders section 31.002(e) of the Civil Practice and Remedies Code inapplicable. *Martin* does not apply, and its reasoning does not support Haden's and the company's contentions.

We hold that the plain language of section 31.002(e) authorizes the award of reasonable costs and attorney's fees incurred by the law firm, in its efforts to secure turnover relief from the trial court and its efforts to seek and obtain dismissal of Haden's personal bankruptcy petition by the bankruptcy court. We therefore conclude that the trial court did not abuse its discretion by interpreting section 31.002(e) as authorizing recovery of reasonable costs and attorney's fees, as requested by the law firm pursuant to the statute.

We overrule Haden's and the company's first sub-issue challenging the trial court's exercise of its discretion in awarding costs and attorney's fees to the law firm pursuant to section 31.002(e). We do not address the two remaining sub-issues because Haden and the company affirmatively abandoned them during oral submission.

We overrule Haden's and the company's second issue.

## Conclusion

We affirm the judgment of the trial court.